# Smith *v.* Georgia Pacific Railway Company.

*Action by Passenger against Railroad Company, for Damages on account of Personal Injuries.*

1.  *Negligence as matter of law; general charge on evidence; error without injury.*—When, on the undisputed evidence, aided by the legitimate inferences which may reasonably be drawn from it, the injury to the

[Smith v. Georgia Pacific Railway Company.]

plaintiff was caused by his own negligence, or by accident without fault on the part of the defendant, the court is not required to submit the question of negligence to the jury, but may give the general affirmative charge in favor of the defendant; and in such case, special rulings adverse to the plaintiff are not ground of reversal in his favor.

2. *Calling out name of station, followed by stoppage of train; injury to passenger attempting to alight.*—When the name of a station is called out on approaching it, and soon thereafter the train is brought to a stand-still, a passenger may reasonably conclude that it has stopped at the station, and attempt to get off; unless the circumstances and indications are such as would show, to any person of reasonable prudence and ordinary observation, that it had not reached the platform, or proper stopping-place; as here, where the train was stopped, after calling out the name of the station, in a deep cut, about two hundred yards from the platform, preparatory to taking a side-track until another train could pass, and the plaintiff was injured while attempting to step from the rear of the car as it moved forward again, and this occurred in the day-time.

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. LEROY F. BOX.

This action was brought by Robert T. Smith against the appellee corporation, to recover damages for personal injuries sustained by plaintiff in attempting to alight from a train of cars, on which he was a passenger; and was commenced on the 5th February, 1887. The pleas were, not guilty, and contributory negligence; and the trial resulted, under the rulings of the court, in a verdict for the defendant. The plaintiff reserved several exceptions during the trial, to the rulings of the court on evidence, and to charges given at the instance of the defendant; and these rulings are now assigned as error.

KELLY & SMITH, for appellant, cited 3 Wood's Railway Law, 1123, §§ 305-06; *Railway Co. v. Miles*, present term; *Railway Co. v. Locke*, 2 Amer. St. Rep. 207; *Selfeld v. Railway Co.*, 5 *Ib.* 173; 74 Iowa, 732; 71 N. Y. 489.

KNOX & BOWIE, contra, cited *Bentley v. Railway Co.*, 86 Ala. 484; *Wilson v. L. & N. Railroad Co.*, 85 Ala. 269; *Mitchell v. Railway Co.*, 51 Mich. 236; 13 Hun, N. Y. 625.

CLOPTON, J.—Appellant's injuries, for which he sues, were received while alighting from a train at Heflin, a regular station on defendant's road. His right of recovery is founded on the allegation, that his injury was caused by the negligence of defendant's servants. The specific negligence complained of is alleged to consist in calling out the name of the station, bringing the train to a stand-still immediately

thereafter, thereby inducing plaintiff to believe, and to act upon the belief, that the train had reached the usual place for landing passengers, and suddenly starting it without giving him notice. Plaintiff's act in leaving the train being voluntary, it is incumbent on him, in order to entitle him to a recovery, or before the opinion of a jury is required to be taken as to the question of negligence, to produce evidence from which the inference may be reasonably drawn, that his injury was caused by the negligence of the defendant. We shall, therefore, direct our consideration to the question, whether on the facts clearly proved, and having regard to the liberty to draw inferences therefrom, the court would have been justified in taking the question of negligence from the jury; for, if on the facts which admit of no dispute, and allowing all adverse inferences, it would have been the duty of the court to set aside the verdict, had one been rendered in favor of plaintiff, and the affirmative charge in favor of defendant was authorized, we need not consider the various rulings of the court.—*Bentley v. Ga. Pac. Railway Co.*, 86 Ala. 484.

A railroad company, being a carrier of passengers, is under obligation to use reasonable care to transport them safely. This general duty includes the specific duty not to expose them to unnecessary danger, and not intentionally or negligently mislead them by causing them to reasonably suppose that their point of destination has been reached, and that they may safely alight, when the train is in an improper place. Calling out the name of the station is customary and proper, so that passengers may be informed that the train is approaching the station of their destination, and prepare to get off when it arrives at the platform. The mere announcement of the name of the station is not an invitation to alight; but, when followed by a full stoppage of the train soon thereafter, is, ordinarily, notification that it has arrived at the usual place of landing passengers. Whether the stoppage of the train, after such announcement, and before it arrives at the platform, is negligence, depends upon the attendant circumstances. The rule is aptly expressed in *Bridges v. Railway Co.*, 6 Q. B. L. R. 377, by Willes, J.: "It is an announcement by the railway officers that the train is approaching, or has arrived at the platform, and that the passengers may get out when the train stops at the platform, or under circumstances induced and caused by the company, in which the man may reasonably suppose he is getting out

at the place where the company intended him to alight. To that extent, calling out is an invitation."

A reference to a few leading cases will aid in the solution of the question, whether, on the facts hereafter stated, plaintiff should or could have supposed that the train had reached the usual place for the discharge of passengers. In *Bridges v. Railway Co.*, *supra*, the executrix and wife sued for injuries suffered by her husband, which resulted in his death. The train on which he was a passenger, had to pass through a tunnel before reaching the main platform. There was within the tunnel a platform, similar to but narrower than the main platform. The train went partially up to the main platform, and stopped, the last two carriages remaining in the tunnel; the last but one opposite the small platform, and the last, in which the deceased was riding, opposite a heap of rubbish lying near the track. A passenger, who had alighted on the platform from the carriage next to the last, found the deceased lying on the heap of rubbish fatally injured. There was no light in the tunnel, and it was filled with steam. The name of the station had been called in the usual way. It was ruled, on appeal from the Exchequer Chamber to the House of Lords, that it might be reasonably inferred that the deceased, having heard the name of the station called, and finding that the train had stopped, got out of the carriage supposing that he would alight on the platform, and that the evidence furnished matter on which it was necessary to take the opinion of a jury.—7 H. L. L. R. 213.

In *Cen. R. R. Co. v. VanHorn*, 38 N. J. L. R. 133, the name of the station, which was plaintiff's destination, was announced while the train was in motion, and soon thereafter it was brought to a full stop, some distance from the station. The plaintiff went out on the platform of the car for the purpose of alighting, and, while standing thereon, the train was suddenly put in motion towards the depot, whereby she was thrown off and injured. This was at night. It is said: "The court would not be warranted in saying that it is not negligence to give notice of the approach to a station, and then stop the train short of such station in the night time. Such a course would naturally tend to jeopardize passengers; for it would induce them to believe that they had arrived at the station designated, and they would in the ordinary course go to the car platform. At night this must be the inevitable result."

In *Taber v. Railroad Co.*, 71 N. Y. 489, Andrews, J. says:

"The plaintiff was justified, under the circumstances, in supposing that she had reached her destination, and that the train was at the place where passengers were to alight; at least, the jury might have come to the conclusion that she was free from negligence. The defendant was bound to take notice of the circumstances—viz., that the station had been announced; that passengers for Williards would naturally assume that the train, when it stopped, was at the station, and at the place where they were to alight; that by reason of the darkness of the night, and the absence of a depot, or other external indication of a station, passengers, especially those not familiar with surrounding objects, would not by observation know that the train had run beyond the highway crossing; that passengers, in the absence of notice, would, according to the usual custom, start to leave the train as soon as it came to a stand-still." In that case, the night was dark, and there was no depot or station light, nor anything to indicate the stopping place, which was a highway crossing, to a person not familiar with it. It was held, that whether notice should have been given to the passengers, as a reasonable precaution, that the train was to back, and whether the omission to do so was negligence, was a question for the jury.

On the other hand, in *Mitchell v. Chicago & G. T. Railway Co.*, 51 Mich. 236; s. c. 18 Amer. & Eng. R. R. Cases, 176, the plaintiff intended to take another train at the crossing of two railways. Before arriving at the junction, the name of the station was called out, and the train came to a full stop, as required by law, before reaching the crossing. Plaintiff hurried to leave the car, went down the steps where there was no platform, or other convenience for landing, and as she was stepping off the cars were suddenly started to go forward to the depot, when she fell and was injured. This was in day-light, and it does not appear that any person employed on the train observed her. It was held, that the injury was purely accidental, unless plaintiff was herself negligent, and that the company was not liable. Campbell, J. said: "The only cause of the mischief, leaving defendant's carelessness or negligence out of view, was her mistaken supposition that the cars had stopped at the station, and that she therefore should get out. There was nothing at the spot to indicate a landing-place, and there was at the proper place, a short distance further on, a building and platform used for that purpose. The stoppage of the cars was re-

[Smith v. Georgia Pacific Railway Company.]

quired by statute, as well as by usage, as a precaution against collisions. The calling of the station was not shown to have been out of the usual course, and from the distance mentioned we can hardly see how it could have been delayed. No one representing the company, whether conductor or brakeman, is shown to have known, or suspected, that plaintiff had put herself in peril, or left her place. Nothing is shown which put them in fault for not knowing this."

We have specially referred to the cases cited, because they distinguish between the instances in which the negligence of the defendant is and is not a question for the jury, and have made the foregoing extracts, because they clearly declare the principles on which the distinction rests. They all concur, that neither the announcement of the station, nor stopping the train before it arrives at the platform, if required by law or usage, for the purpose of avoiding collisions or other accidents, is negligence *per se*. In *Bridges v. Railway Co.*, *supra*, Baron Pollock observes, in reference to the conduct of the passenger who was injured; "Had he known that the rubbish was there instead of the platform, to jump out on to it with such a fall as would break his leg, and occasion mortal internal injuries, would indeed have been negligent, and rash in the extreme. But it was two hours after sun-set, there was no light in the tunnel, and the deceased was near-sighted; and he might well have supposed that he would step on the platform, as did the passenger in the next carriage, with impunity." It will be observed, that in each of the cases in which it was ruled there was evidence of negligence sufficient to be submitted to the jury, there existed the element that, by reason of the want of light or other things, the passenger may have been deceived into supposing the train had arrived at the platform, or place where it was intended he should alight. Comparing all the cases, we deduce, that when the name of the station is called, and soon thereafter the train is brought to a stand-still, a passenger may reasonably conclude that it has stopped at the station, and endeavor to get off, unless the circumstances and indications are such as to render manifest that the train has not reached the proper and usual landing place.

The undisputed facts are: Heflin was the point at which the regular passenger trains met and passed each other. It was customary for the east-bound train, on which plaintiff was a passenger, to take the side track, leaving the main track unobstructed for the passage of the train going westwardly.

[Smith v. Georgia Pacific Railway Company.]

This was necessary to avoid collision. Heflin was plaintiff's point of destination. As the train was approaching, the name of the station was called as usual, and the train was stopped very soon thereafter, the object being to take the side track. On its stopping, plaintiff went out of the rear door of the car, and was descending with one foot on the first step of the car, and the other about touching the ground, when the train moved forward to go to the depot, which caused him to fall. It was drawn to the usual place for the discharge of passengers, and again stopped. The rear of the car, from which plaintiff was getting off, was about two hundred yards from the depot building, the proper place for the discharge of passengers. The train was first stopped in a cut, about three hundred and sixty feet long, and from five to eleven feet deep. This was in day-light, about one o'clock P. M. Plaintiff had been in Heflin once before; but, as he states, arrived and departed in the night-time, and was not about the depot in day-time. Nevertheless, he knew, or ought to have known, that there was a depot at which passengers got off and on the trains, and that it was not in such a cut. All the surroundings indicated that the spot at which plaintiff attempted to leave the train was not the proper place for landing. From the description of the place given by witnesses, and shown by the diagram in evidence, it is unreasonable to conclude, or infer, that any person possessing the ordinary sense of sight, and using it, could have supposed that the train had arrived at the place where the company intended passengers to get off. It does not appear that any of those in charge of, or employed on the train, noticed the plaintiff when leaving it, or had cause to suspect his intention to get off. There were no circumstances or surroundings caused by the company, which should have induced plaintiff to reasonably suppose he was getting out at the place where the company intended him to alight. The evidence clearly establishes, that his injury was accidental, if not produced by his own negligence. On the undisputed facts, the court would have been justified in giving the affirmative charge in favor of defendant.

Affirmed.