# Richmond & Danville Railroad Co. *v.* Smith.

*Action by Passenger against Railroad Company, for Damages on account of Personal Injuries.*

1. *Calling out name of station, followed by stoppage of train; injury to passenger attempting to alight.*—When the name of a station is called out on approaching it, and soon thereafter the train is brought to a stand-still, a passenger may reasonably conclude that it has stopped at the station, and attempt to get off, unless the circumstances are such as would show to any person of reasonable prudence and ordinary observation that it had not reached the proper stopping-place; and this does not appear where the facts show, as in this case, that about five o'clock on a dark morning, after the name of the station had been twice called out by the porter, the train stopped at a water-tank seventy-five yards from the station, where it very seldom stopped, and where the conductor did not know it would stop, and that plaintiff, a passenger, was injured in stepping from the front platform, the car standing on a trestle.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellee, F. W. Smith, against the appellant corporation, and sought to recover dam-

.ages for injuries suffered by the plaintiff, which were caused by the alleged negligence of the defendant. The uncontroverted facts are set out at length in the opinion of this court. The case was tried without the intervention of a jury, and upon the evidence introduced, the court rendered judgment for the plaintiff; and the defendant now brings this appeal.

JAMES WEATHERLY, for appellant.—1. The judgment is erroneous, because the preponderance of the evidence did not show that defendant was negligent.—*Smith v. Ga. Pac. Railway Co.*, 88 Ala. 538; *Taber v. R. R. Co.*, 11 N. Y. 489. 2. Plaintiff was guilty of contributory negligence in attempting to alight without looking, or pausing to ascertain his surroundings.—*Smith's case*, 88 Ala. 538; *A. G. S. R. R. Co. v. Arnold*, 84 Ala. 172. 3. The evidence fails to establish the legal relation of cause and effect between the particular negligence complained of and the fall and injuries complained of.—*A. G. S. R. R. Co. v. Arnold*, 80 Ala. 604.

J. M. McMASTER, *contra*, cited *Smith v. Ga. Pac. Railway Co.*, 88 Ala. 538, and Wood's Law of Railroads, § 305, p. 1123.

CLOPTON, J.—In *Smith v. Ga. Pac. Railway Co*, 88 Ala. 538, the following propositions were declared:· The announcement of the name of a station, being usually intended to inform the passengers that the train is approaching the point of their destination, so that they may prepare to get off when the train stops, is not, of itself, an invitation to alight; but, if the train is soon thereafter brought to a full stop, a passenger may safely conclude, in the absence of notice, that the train has arrived at the station, and attempt to get off, unless the surroundings and circumstances are such as would show to a reasonably careful and prudent man, that the train had not reached the proper landing place. These propositions rest on reason and experience, are justified by custom, conform to the understanding of railroad carriers and the travelling public, and are maintained by the strong current of authority. When a passenger, acting, in such case, under a reasonable belief that the train has stopped at his point of destination, endeavors to get off, *using ordinary care, and is injured in consequence of the train having stopped short thereof, the company is liable.*—18 Amer. & Eng. R. R. Cas. 179.

Application of these principles will suffice for the proper determination of this appeal. The following facts are undisputed. Plaintiff was a passenger on defendant's train, Coal-

[Richmond & Danville Railroad Co. v. Smith.]

burg being his point of destination. At the usual place the engineer blew the whistle, announcing the approach of the train to Coalburg, and the porter twice called the name of the station in the car where plaintiff was seated. A few moments thereafter, the train was brought to a stand-still at a water tank about seventy-five yards short of the station. Thereupon the plaintiff immediately left his seat, followed by his companion, for the purpose of getting off, walked to the front platform of the car, took hold of the rail with his right hand, and losing his balance stepped off and fell through a trestle over which the car was standing. It was not usual for the train to stop at the tank; the conductor testified, that it had never stopped there before within his recollection. The reason for stopping on this occasion was, that owing to delay caused by a wreck on the road, the engine got out of water, which fact was unknown to the conductor and other train employés. Not knowing that the engineer intended stopping the train at the tank, and supposing it had arrived at the station, the conductor, who was in the same car with plaintiff, passed through to the front platform of the second class coach. The bare statement of these facts, without argument, shows their sufficiency to induce a reasonable belief, that the train had arrived at the proper stopping place. The conductor, who was familiar with the road, so believed, and certainly more will not be required of a passenger.

This brings the question, whether the surroundings were such as fairly indicated that the place, where plaintiff attempted to get off, was not the station, and whether he exercised such care as will relieve him of contributory negligence. These questions may be considered together. It was about five o'clock in the morning, and very dark. There was a building at the station near the road, but no platform. The ground, which had been made smooth and level with cinders, was eight or ten inches from the steps of the coach. There was a light in the station house, but as to whether it could be seen from the outside the evidence was conflicting; the preponderance supporting the contention of plaintiff, that it could not be seen, at least from where he attempted to get off. There were bright lights in the coaches, and there is evidence tending to show that the trestle could be seen by these lights, but the testimony of the conductor is, that he required the aid of his lantern to see the trestle from the platform, and it does not appear that he observed the trestle, when he passed out of the car; he did not discover his mistake as to the train not being at the station, until he had reached the front platform of the coach next in front of the car in which plaintiff was seated. Comparing the

facts in this case with those in *Smith v. Ga. Pac. R'way Co.*, *supra*, the difference in the cases consists in stopping a train at mid-day in a long, deep cut, clearly showing that it was not at the landing place, and stopping in the darkness of the night at a place without any such indications; also, in stopping a train at a point where it was customary and necessary, and at a point where it had never been stopped before.

It was the duty of the railroad company to provide at the station suitable and safe egress from the train, and plaintiff had the right to presume, and act on the presumption, that this duty had been performed. He was not required to stop on the platform of the car and look for a trestle, the presence of which he had no cause to suspect. Having been induced by the conduct of the company's employès, to reasonably believe that the train was at the station, he was also authorized to believe that he could descend the steps to the ground with safety. The name of the station having been announced, it was natural that the passengers, destined for Coalburg, would commence to leave the train as soon as it was brought to a full stop, and the stopping of the train, under such circumstances on a dark night, jeopardized the passengers. The train having been stopped at an unusual place, short of the station, it was the duty of those in charge to use all due precaution to protect the passengers from injury, especially when it is dark and the train is stopped on a trestle or other place of danger—some notice or warning should have been given. The conductor's ignorance of the intention to stop the train at the tank is no excuse; due precaution required the engineer, who knew the necessity to get water and the danger of the place, to inform the conductor, or some other employè, that the passengers might be notified or warned not to get off. Human life can not be thus carelessly endangered with impunity.—18 Amer. & Eng. R. R. Cas. 272.

An examination of the evidence satisfies us, that the plaintiff's injury was the natural and proximate result of the negligence of defendant's employès, and that his negligence did not contribute thereto. The case having been tried without a jury, it is unnecessary to consider the rulings on evidence; for if the conductor had been allowed to answer the questions objected to, it would not have changed the result.

Affirmed.