# East Tennessee, Virginia & Georgia Railway Co. v. Holmes.

### Action for Injuries to Passenger.

1. *Contributory negligence as matter of law.*—When on the undisputed evidence, and the legitimate inferences drawn from it, the injury to a passenger is caused by his own negligence, the court is not required to submit the question of negligence to the jury, but may on request give the general affirmative charge in favor of the defendant.

2. *Contributory negligence in alighting from moving train.*—Although a passenger may reasonably conclude that he has reached his destination when the name of the station is called and the train comes to a stop, yet, if the circumstances would indicate to a prudent person that the proper stopping place had not been reached, and he voluntarily steps from a moving train in the darkness, he is guilty of such contributory negligence as will defeat a recovery f r injuries sustained.

APPEAL from Talladega Circuit Court.

Tried before Hon. LEROY F. BOX.

Action by Jacob R. Holmes against the E. T., Va. & Ga. Rwy. Co., to recover damages for injuries caused by the alleged negligence of defendant.

KNOX & BOWIE, for appellant, insisted that the general charge should have been given, citing *Smith v. Railroad Co.*, 88 Ala. 538; *Railroad Co. v. Smith*, 92 Ala. 237; *Mitchell v. Railroad Co.*, 51 Mich. 236; *Downey v. Hendrie*, 46 Mich.; s. c. 8 Am. & Eng R. R. Cas. 386; *Railroad v. Schauffler*, 75 Ala. 136; *Lillie v. Fletcher*, 81 Ala. 234; *A. G. S. Railroad v. Hawk*, 72 Ala. 112; *Woodward v. Jones*, 80 Ala. 123.

CECIL BROWNE, for appellee, cited *Lent v. Railroad Co.*, 120 N. Y. 467; 18 Am. & Eng. R. R. Cas. 179; *Railroad v. Miles*, 88 Ala. 256; *Railroad v. Stewart*, 91 Ala. 423.

HARALSON, J.—This suit is for damages, brought by the appellee, who was a passenger on the railroad train of the appellant, having paid his fare from Talladega to Childersburg, two stations on said railroad. The complaint charges, that when the train arrived at or near the town of Childersburg, it was stopped at a point on said railroad, about one hundred and fifty yards from defendant's depot, and the plaintiff was then and there *ordered and commanded* by the servant or agent of the defendant, whose duty it was to notify passengers when and where to leave the cars, to leave the one in which he was riding ; and thereupon, plaintiff quit his seat and proceeded to the rear steps of the car and just as he had gotten on the steps, and was in the act of leaving, and before he had time to get off, the car was suddenly started, thereby causing him to fall and be thrown into a ditch, whereby he was injured ; and, it is averred, that his injuries were caused by the carelessness of the servants of the defendant, in not affording plaintiff a reasonable opportunity, and by his being *instructed* and *commanded* to leave the car, when there were no facilities for leaving it, and by said car being started, before he had an opportunity to get off.

The gravamen of the complaint, as is manifest, is in the alleged forcible ejection of the plaintiff from the train, at a place and time, when no opportunities were afforded him, for departing with safety. The language employed is emphatic—"ordered and commanded," "instructed and commanded," to leave. One thus treated, must be held to have been forced, against his will, to depart. It implies, that force might have been used to cause him to leave, if he had not obeyed ; and obedience, under such circumstances, must be held to have been forced.

There was a demurrer to the complaint, which was properly overruled, and thereupon, defendant pleaded not guilty, and contributory negligence on the part of the plaintiff.

If this case were tried on the general issue, without reference to the plea of contributory negligence, as we said in a similar case, "The first inquiry would be as to whether the agent of the defendant was guilty of any tort, wrongful act or negligence which resulted in the injury to plaintiff. If there was no wrongful act of omission or commission, such as constitutes a violation of legal duty on the part of defendant, or its agents, no recovery of damages by plaintiff could be had, whatever may have been the extent of his injuries.

So, if it were shown that the defendant, or its servants

were guilty of such wrongful act, but that this act had no legal connection with the injury received, so as to have operated to produce it, as a natural and proximate consequence, there could be no liability cast on the defendant."

If, however, as we further held, the defendant or its servants were guilty of some wrong or negligence, the question then is, "(1) Whether the damage complained of was occasioned entirely by the negligence or wrongful act of the defendant, or its servants; or, (2) whether the plaintiff, by his own negligence or want of ordinary care and prudence, has so far contributed to his own misfortune, that but for his contributory negligence, the injury complained of would not have happened."—*South & North Alabama R. R. Co. v. Schaufler*, 75 Ala. 141.

Tried on the plea of not guilty, there is such a disagreement between the allegations of the complaint and the proof, as the evidence of the plaintiff, himself, and that of his brother, examined in his behalf, will show, as would not entitle the plaintiff to recover.

At Childersburg, there is a railroad crossing, that of the defendant's road and the Columbus and Western Railroad. The depot of the latter road, is about 50 or 75 yards from the crossing, and that of the defendant, about 75 or 100 yards from the same point. A long platform extended from the Columbus and Western depot, to the crossing, and one from that point, to the depot of the defendant, the two forming, as described, about a right angle triangle.

It is well to state, just here, that it is provided by statute that, "When the tracks of two railroads cross each other, engineers and conductors must cause the trains of which they are in charge, to come to a full stop, within one hundred feet of such crossing, and not to proceed until they know the way to be clear."—*Code*, § 1145.

The train, as the evidence shows, consisted of seven cars, including the engine and tender, and was about one hundred yards long, and the plaintiff was travelling in the rear coach. The evidence also showed, without conflict, that the train stopped near the crossing, as required by the statute, but only for a moment, and stopped its usual length of time, at the depot of defendant, just below the crossing, 75 or 100 yards.

To sustain his complaint, and in giving his account of the transaction, the plaintiff testified, that the train blew for Childersburg, about a half mile before reaching the station; that the young man in the employ of the company, calling out the stations, cried out, "Childersburg." In a short

while, afterwards, but he does not tell how long, the train stopped, and just a little while before it stopped, the same man cried out, "All out for Childersburg;" that when the whistle blew, this porter, who was sitting immediately in front and to the left of plaintiff, announced "Childersburg," and picked up his lantern, and after walking a few steps towards the front door of the coach, called out, "All out for Childersburg," and arriving at the front door, opened it, and again called out "Childersburg," "All out for Childersburg," and closed the door, went out on the platform of the car, and just then, the train came to a full stop ; that plaintiff and his brother were sitting about ten feet from the rear end of the car, and when the train stopped, they picked up their baggage, and walked to the rear of the coach, his brother being in front ; that the brother walked out, to get off, but he didn't see him get off, and didn't know what had happened to him, till afterwards ; that when plaintiff reached the rear door of the car, the train was starting, or in motion, and as he reached the steps of the car, he discovered the speed of the train was increasing, but he could not tell how fast it was going, but it seemed to be moving slowly, and it was too dark for him to discover it was moving, at a dangerous rate of speed ; that there were no lights on the outside ; he could see the surface beneath him, but it was too dark for him to discover whether what he saw was the ground or the platform ; that when he stepped from the train, he fell on the platform, about ten feet below the crossing ; that he did not see any officer, or the said porter, of the company, at the time he left the train, nor did any officer or employe of defendant, or any other person speak to him, and tell him to get off at the place he did, nor did any other passengers get off at the same place ; that plaintiff had been in Childersburg several times before, had come there, that morning, on the Columbus & Western road, and gone up on defendant's road to Talladega, and had travelled over the Columbus & Western to Childersburg, about a month before, and when he left the train, he did not know he had not arrived at the station at Childersburg.

The plaintiff's brother testified, in his behalf, substantially as plaintiff did ; that when he reached, and went out of the rear door of the car, the train had started ; that he could see he was stepping on the ground, but couldn't tell how far the ground was below him ; that he stepped off the train about ten yards above, and from the crossing.

There was no evidence, that the porter knew the plaintiff, or where he was going, or where he desired to get off, or that he had gotten off.

[East Tennessee, Virginia & Georgia Railway Co. v. Holmes.]

Taking these statements of the plaintiff as true, in which he represents the porter, as giving a greater number of notifications of the arrival or approach of the train at Childersburg than is usual,—judging from our own experience and observation,—and which, no doubt,—without impugning his veracity,—are colored with some degree of extravagance, how can it be said, in fairness, as it is averred, in the complaint, that plaintiff, was "instructed," "ordered," "commanded," to leave the train when he had no facilities for doing so? The words used can be construed as implying, in the intention of the porter, nothing more than a notification of the approach of the train to Childersburg, or of its arrival at that point. As we said of words of similar import in the *Schaufler case*, *supra*, they are not susceptible of a construction which would impute to him any purpose to force or compel the plaintiff to prematurely alight from the train, or to put himself in the slightest peril in leaving it, and there was, for this reason, the variance between the allegations of the complaint and the proof, of which we have spoken. The substance of the issue, is unsupported by the evidence in the record.

But, if tried on the plea of contributory negligence, in pleading which, the defendant admits itself to be guilty of some negligence, the case is in no better condition for plaintiff.

If it be admitted, that the language employed by the porter, is such as is deposed to by plaintiff, but denied by the porter, and that the plaintiff might have reasonably concluded therefrom, that the train had arrived at the station, at which he was to depart, and justified him in an attempt to get off, still such a conclusion could not be lawfully indulged by him, if the circumstances and indications were such as would show, to any person of reasonable prudence and ordinary observation, that it had not reached the proper stopping place. Such was our ruling in *Smith v. Ga. Pac. Railway Co.* 88 Ala. 538, and repeated in, *The Richmond & Danville R. R. Co. v. Smith*, 92 Ala. 237.

Surely the circumstances and indications were not such as reasonably to induce him to believe, that the train was at the station, when it halted but for a moment at the crossing. There were no lights, no depot building or any other land-mark, to indicate a station. He was acquainted with the location, and knew of the crossing, and there was the absence of every physical fact, to suggest that the train had reached the station.

Now, what are the facts to show contributory negligence

[East Tennessee, Virginia & Georgia Railway Co. v. Holmes.]

on the part of plaintiffs? When the train stopped for the crossing, the rear of the car in which plaintiff rode, was three hundred feet, or one hundred yards, from the crossing. Even, if by a great stretch of indulgence, it be allowed he was justified in concluding that it had arrived at the station, the fact remains, that it had been put in motion before the brother of plaintiff, or plaintiff, attempted to alight. When the brother fell, it was within ten yards, or thirty feet, of the crossing, showing, that the rear of the coach, in which they were riding, had travelled, at least, two hundred and seventy feet, before the brother struck the ground, thirty feet before the crossing was reached, and three hundred and ten feet, before plaintiff leaped off, ten feet after the platform, at the crossing, had been reached.

They each made this leap in the dark, as they seek to make it appear, and whether light enough to see or not, it was at a time, when the train was going fast enough,—some six or eight miles an hour, as defendant's witnesses put it,—to injure both parties, breaking the arm of plaintiff, when he fell. He did not know, as he confesses, whether he was alighting on the ground or on the platform, nor did he know, that the train had not arrived at the station at Childersburg. He was blindly taking the chances. He saw no one when he got off, no one gave him any instructions about getting off; he got off at the rear end of the car, instead of at the door the porter had opened and passed out of, with his lantern in hand; and he made the leap, of his own accord, at great peril to his life and limb, because, as it would seem, he did not desire to be carried beyond his destination. He thus took the risk of his own reckless venture, and the defendant ought not to be made to pay for it.

There was not even the excuse of necessity for his having done so. If it had been true, as he alleges in his complaint, he supposed it to be, that he was at the station, and the company gave him no opportunity to get off, and he had been carried beyond his destination, the conductor, on his demand, would have been bound to stop his train and return and put him off at the station, or the company would have been liable in damages. No one has the right to leap from a moving train, because he is being carried beyond his destination, with the expectation of claiming from the railroad company damages for any injury he may sustain. His duty is to remain aboard, and demand redress for the injury that may have been done to him.

In no aspect of the case in which we have been able to view it, can we see that the plaintiff has any right of re-

covery.   The general charge requested by defendant ought
to have been given.

Reversed and remanded.