## Richmond.

CHESAPEAKE & OHIO RAILWAY CO. v. SMITH.

January 12, 1905.

Absent, Cardwell, J.

1. JURORS—*Disqualification—Friendship—Physician and Patient.*—The fact that jurors in a civil case are friends of the plaintiff, and that he is their family physician, does not *per se* disqualify them from sitting in the case. The trial court must determine from all the facts before it whether or not a juror is competent. In the absence of other evidence, his statement on his *voir dire* that the relation would not influence his verdict is sufficient to warrant his acceptance.

2. RAILROADS—*Safe Stations—Lights.*—It is the duty of railroad companies, for the protection of passengers carried or to be carried, on its trains, to provide and maintain at its stations reasonably safe and adequate ways for approaching and leaving its trains, and, at night, to have such ways reasonably lighted a sufficient time before and after the arrival and departure of each train to enable passengers to avoid danger.

3. RAILROADS—*Passengers—Invitation to Alight—Safe Way to Station—Lights—Case at Bar—Proximate Cause.*—Where passengers on a railroad are invited, expressly or impliedly, to get off a train at a place other than that at which they usually alight, and there is any special danger attending their approach to the station, it is the·duty of the railway company to warn them of such danger, and to aid them in reaching the station in safety. This is especially true in the night-time. In the case at bar a passenger got off on such invitation, and in making his way along the track to the platform, on a very dark night, fell through a cattle guard over which it was necessary for him to pass, which was not lighted, and of which he had no previous knowledge, and was injured. It is

held that the negligence of the company in failing to furnish light, or to give any warning of the danger was the proximate cause of the injury, and the failure of the passenger to walk through half a dozen coaches to reach the platform before getting off, or to require the conductor to pull up to the platform was not such contributory negligence as would bar recovery.

Error to a judgment rendered by the Circuit Court of Fluvanna county, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*A. K. & D. H. Leake,* for the plaintiff in error.

*Gray & Gray,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

O. M. Smith instituted this action against the Chesapeake & Ohio Railway Company, to recover damages for injuries received by him, resulting from the alleged negligence of the railway company.

Upon the trial of the cause, there was a judgment in his favor, and to that judgment this writ of error was awarded.

The first error assigned in the petition is to the action of the Circuit Court in overruling the demurrer to the declaration and to each count thereof. This assignment of error was abandoned in the oral argument, and properly so, as each count sets out a good cause of action.

The second assignment of error is to the refusal of the court to sustain the railway company's objection to certain members of the jury who were sworn to try the case. The objection

made to these jurors is that they were friends of the plaintiff, and that he was their family physician.

The bill of exceptions shows that when examined on their *voir dire* they "stated that they were friends of the plaintiff, and that he was their family physician; but that such relation to the plaintiff would have no influence upon their verdict." A juror is not disqualified from sitting in a case because he is a friend of one of the litigants, (*Rex* v. *Greach*, 38 E. C. L. 195) nor where there is great intimacy between their families, unless it appears that such relations will interfere with his impartiality of action. *Montague's case*, 10 Gratt. 767, 774.

There are certain relations in life from which the law conclusively presumes bias, such as affinity or consanguinity within certain degrees, and when a juror is examined upon his *voir dire* and it appears that such relationship exists, that alone is sufficient to exclude him from the jury, although, in fact, he may be free from all bias. There are other relations existing between juror and litigant from which the law raises no presumption of bias, yet if upon his examination it appears that the juror is not impartial, the law excludes him. In such a case the trial court must determine the juror's competency from all the facts before it. The juror may state and honestly believe that he is free from all bias, and yet it may appear from his own or from extraneous evidence, or both, that such may not be the fact. The object of the law in all cases is to obtain an intelligent as well as impartial jury. In order to do this, it is neither necessary nor wise to determine the juror's impartiality by extending and applying arbitrary or technical presumptions which may have the effect of excluding the most competent man on the list from the jury. Sustaining challenges for favor on slight grounds, as was said by the General Court in *Moran's case*, 9 Leigh, 651, 656, tends to place the administration of justice in the hands of the most ignorant and least discriminating portion

of the community, by which the safety of the accused may be endangered, and the proper administration of the laws put to hazard; and we are therefore not disposed to enlarge the grounds of challenge beyond those properly deducible from the cases heretofore decided. We have been cited to no case, nor have we found one in our investigation which holds that where the relation of physician and patron exists the law conclusively presumes such bias that neither is competent to act as juror in a case to which the other is a party. The contrary has been held in the case of attorney and client (*Rex* v. *Greach, supra*) who in many respects occupy similar relations. The examination of the jurors in question, and that was the only evidence before the court, could leave no doubt in the mind of the court as to their competency, and it did not err in accepting them as jurors.

The third assignment of error is to the action of the court in overruling the railway company's demurrer to the evidence.

The facts, as they appear upon the demurrer to the evidence, are substantially as follows: The plaintiff, with his wife, mother, and sister had on the morning of the accident gone from Columbia, a station on the railway company's line, to Richmond, on an excursion train, consisting of twelve coaches, carrying about one thousand passengers. The train returned that evening, reaching Columbia behind time, and after dark. As the train approached the station, and immediately before it stopped, a brakeman opened the front door of the rear car in which the plaintiff was riding, called out "Columbia," and passed into the car ahead. As soon as the train stopped, all passengers on that car got off on the side next to the canal. The plaintiff, with his party, alighted with some difficulty, on account of the heighth of the car steps from the ground, and the bundles they were carrying. They waited until the train pulled out, which was about four minutes from the time it stopped. After the train left, the plaintiff and his party went upon the railway track and

started towards the depot, which was some eighty yards distant: Between him and the depot, after getting off the train, about twenty or twenty-five yards off, and unknown to him, there was a cattle guard, four feet deep, into which the plaintiff, who was in advance of his party fell, and suffered the injury complained of. The night was very dark, so dark that the plaintiff and the ladies who were with him could not see each other after the train left, and he saw no light until after he had fallen and was getting out of the cattle guard, when he saw two men, with lanterns, about fifty yards away between him and the depot. When the plaintiff got off the car, he did not know exactly where it was. None of the railway employees aided him or his party in getting off the car, nor furnished light, nor gave him any information as to the cattle guard which he would be compelled to pass in going from where he alighted to the depot.

When the train stopped, the plaintiff did not know how far his car was from the station platform, but thought that it was his duty to get off as he did. Upon cross-examination, he stated that he knew that if he had asked the conductor to pull up to the station he would have been obliged to do so, and the conductor testified that if requested he would have done so; but stated that it was his duty to be at the platform when passengers were getting off the train, and that he was standing there assisting them in getting off. The plaintiff testified that the car ahead of his was crowded, and that he and his party could not have gotten through the crowded cars (some six in number) to the platform before the train pulled out. The station platform was sufficiently long to enable passengers to get on and off the trains of the length usually run upon the road.

It is the duty of a railway company, for the protection of passengers carried, or to be carried, on its trains, to provide and maintain at its stations reasonably safe and adequate ways for approaching and leaving its trains, and at night to have such

ways reasonably lighted a sufficient time before and after the
arrival and departure of each train to enable passengers to avoid
danger.   See 6 Cyc. L. & P., 605-610; *Alex. & Fred. R. R. Co.*
v. *Herndon*, 87 Va. 193, 199, 200, 12 S. E. 289; *Rich'd &
Danv. R. R. Co.* v. *Morris*, 31 Gratt. 200; *Reed* v. *Axtell, &c.*,
84 Va. 231, 4 S. E. 587.

And where passengers are invited expressly or impliedly to
get off a train at a place other than that at which they usually
alight, and there is any special danger attending their approach
to the station, it is the duty of the railway company to warn
them of such danger, and to aid them in reaching the station in
safety, and especially is this true in the night time.   See same
authorities cited above.

The action of the railway company in announcing the
approach of its train to the plaintiff's station, in leaving his car
door open, and in stopping the train, was clearly an invitation
to the plaintiff to alight. .It was so understood by him and all
the other passengers on that car, as appears from their action in
getting off.   It was so intended by the railway company, since it
gave no other opportunity for them to get off.   It knew that
passengers, in getting off the car in which the plaintiff was,
could not reach the station without passing over the cattle
guard.   Yet it neither warned the plaintiff of this danger nor
lighted up the way, nor gave him any assistance whatever in
reaching the station, but moved its train off, leaving him and his
party to grope their way to the station in darkness so great that
they could not see each other.

It is not often (and to the credit of the railways of the State)
that we are called upon to consider a case of such culpable negli-
gence on the part of a railway company to its passengers as this
record discloses.   The railway company's negligence was clearly
the proximate cause of the plaintiff's injury.   It knew that in
reaching the station from where it had invited him to leave its

train, he would have to pass over the cattle guard. His falling into it, under the circumstances disclosed by the record, was one of the probable injurious consequences which were to be anticipated from its negligence, and that fact and not the number of subsequent.events or agencies which intervened is the legal as well as the practical and common sense test of whether or not its negligence was the proximate cause of the plaintiff's injury. *Standard Oil Co.* v. *Wakefield, &c.,* 102 Va. 824, 832-834, 47 S. E. 830, and authorities cited.

The contention that the plaintiff was guilty of contributory negligence in not going through the cars between him and the station platform before getting off, or in not hunting up the conductor who was at the front end of the train, and requesting him to move the train until the rear car reached the platform, so that the passengers in it could get off in safety, is without merit. The plaintiff, as we have seen, was invited to get off where he did, and he cannot be held guilty of negligence for doing what he was asked to do, or for failing to do what is not usual, what ordinary prudence would not have suggested, and what, if it was necessary or proper for him to do for his safety, the railway company ought to have informed him of when it announced his station and stopped its train.

The judgment of the Circuit Court is, in our opinion, plainly right, and must be affirmed.

*Affirmed.*