WOLF, Executor, Respondent, vs. CHICAGO & NORTHWEST-
ERN RAILWAY COMPANY, Appellant.

*March 22—April 9, 1907.*

*Railroads: Injury to passenger alighting before station reached: Neg-
ligence: Contributory negligence: Court and jury.*

1. Plaintiff's intestate was fatally injured by stepping from defend-
ant's train on a dark, rainy night and falling through a trestle,
the train having stopped, as was customary, at a railway cross-
ing a short distance before reaching the station. The usual
street lights were not burning. The evidence showed or tended
to show, among other things, that the brakeman had called the
station and passed forward without giving any warning that
the first stop would be at the crossing; and that deceased was
familiar with local conditions and with the custom to stop the
train at the crossing. There was no evidence of any custom to
call the station before such stop. *Held*, that the question of de-
fendant's negligence was one for the jury.

2. To establish negligence on the part of defendant in such case it
was not essential to prove that, as alleged in the complaint, the
brakeman left the car door open after announcing the station.

3. Notwithstanding the deceased was familiar with local conditions
and might have known that the first stop was at the crossing,
the circumstances—including the rain, the darkness, the calling
of the station, the movement of the brakeman immediately fol-
lowed by the stopping of the train, and the movements of other
passengers indicating a purpose to leave the train at once—are
*held* sufficient to make it a question for the jury whether he
was guilty of contributory negligence in acting, through mo-
mentary forgetfulness, upon the supposition that the station
had been reached.

4. What one knows regarding a condition liable to affect his per-
sonal safety he is presumed to remember, but even slight cir-
cumstances may be sufficient to carry to the jury the question
whether momentary forgetfulness in a given case was negli-
gence.

5. Under the circumstances mentioned, and in view of the fact that
the customary stop of a train at a small station is often very
short and passengers are expected to leave the train promptly,
it was not negligence as matter of law for the deceased to step
from the train without looking for the customary station lights
or observing their absence.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover damages caused to the surviving relatives of Adam Wolf by his death, claimed to have been produced' by defendant's negligence.

On the 26th day of October, 1905, the deceased was a passenger on defendant's train, taking passage from Glenbeulah: to Plymouth, Wisconsin. When the train approached his destination it was about 6:30 p. m. It was raining hard and was very dark. The street arc lights that were customarily in service at such time were out. The train stopped a short distance before reaching the depot at a point where the car in which Wolf was riding stood on a trestle or bridge and about eighteen feet above the ground. Just before the train stopped the brakeman opened the front door of the car and in a loud voice called the station and then passed forward leaving the door open. When the train stopped, Wolf, supposing he had arrived at his destination, arose from his seat, walked forward onto the car platform, turned to the right, and stepped off the car, when he fell to the ground below, whereby he was so injured that he died the next day. Such in substance are the allegations of the complaint, the negligence claimed being the conduct of the brakeman and the stoppage of the train, falsely indicating to Mr. Wolf that the time had arrived for him to leave it. There was an answer putting in issue the allegations of the complaint as to negligence of the defendant and raising an issue of contributory negligence on the part of the deceased.

The evidence established, or tended to establish, all the allegations of the complaint, except as to closing the door by the brakeman, and the following: A short distance before reaching the railroad station at Plymouth on the occasion in question it was necessary, as was customary, for the train to stop on account of a railway crossing. The deceased was a man seventy years of age, who had resided for some twenty-nine

years in Plymouth.  He had previously resided in Glenbeulah, some six miles to the west of Plymouth, had frequently traveled between the two places on the defendant's train, and was well aware of the custom for trains to stop before reaching the crossing, as was done in the instance in question, this, however, not referring to the calling of the station before making the stop.  The railroad crossing had existed and the necessity for trains coming from Glenbeulah to stop therefor before pulling down to the station for some twenty-four years. Mr. Wolf was a business man of considerable experience, was well and active for one of his years; and was awake during the entire passage from Glenbeulah to the place where he left the train.  His home was on the west side of the station, and it was not uncommon for persons who lived in the westerly part of Plymouth to leave the train when it stopped for the crossing.  The depot at the station was lighted as usual, there being electric lights inside and two incandescent lights outside. As the train stopped Mr. Wolf left his seat, went out upon the car platform, closed the door after him, turned to the left, which was the proper course in leaving the train at the station, and stepped off into the darkness, resulting in his death as stated in the complaint.  No warning was given by the brakeman after calling the station that the first stop would be at the crossing.  Other passengers destined for Plymouth supposed as Mr. Wolf did that the station had been reached and accordingly started or prepared to alight, but were deterred from executing their purpose by the train starting.  One person left the car at the rear before the train came to a full stop in order to take a short way to his home, as was often done by persons living in the part of town where Mr. Wolf resided. There was no proof that it was customary to call the station before the train stopped for the crossing, or that the deceased on other occasions had alighted when the train stopped for the crossing in order to take the short way to his home.  There was other evidence touching questions submitted to the jury,

but that already referred to is sufficient for the purposes of the appeal.

At the close of the evidence defendant's counsel moved for a directed verdict, which was denied. The cause was then submitted to the jury for a special verdict, resulting in these findings: Adam Wolf stepped from defendant's train and met his death as alleged in the complaint. When he stepped from the train the car on which he was riding was standing still. Just before the train stopped the defendant's brakeman opened the door at the front of the car and called out the station. He did not warn the passengers that the train would stop or had stopped on the bridge. Defendant's servant failed to use ordinary care for the safety of the passengers destined for Plymouth. Mr. Wolf understood from the calling of the station and failure to give warning to the contrary that when the train stopped it was at the station. There was then no street light burning in the vicinity. It was so dark that the exercise of ordinary care would not have brought to his attention the fact that the car was on the bridge. The negligence of the brakeman was the proximate cause of the death of Mr. Wolf. He was not guilty of any want of ordinary care contributing to produce his death. The damages caused to the surviving widow of Mr. Wolf are $1,250.

The defendant moved for judgment notwithstanding the verdict and plaintiff moved for judgment on the verdict. The former was denied and the latter was granted.

*Edward M. Hyzer,* for the appellant.

*M. C. Mead,* attorney, and *Simon Gillen,* of counsel, for the respondent.

MARSHALL, J. Counsel for appellant stated this as the proposition presented by the record for decision:

"If a railroad company stops a passenger train at a railroad crossing as the train approaches a railroad station, in the nighttime, after the station has been called, without notice to

the passengers that the stop is not for the station, is such conduct of the company negligent as to a passenger who is entirely familiar with local conditions ?"

We cannot agree with counsel that the quoted language accurately covers the matter to be decided. It omits several circumstances which may well have had weight in the mind of the trial court in submitting the cause to the jury, and in the minds of the latter in reaching a conclusion. Some of such circumstances are the following: The station was called by the brakeman as he opened the front door of the car. He closed the door thereafter as if nothing more were to be done on his part before the time for passengers to alight. It was raining hard at the time, suggesting reasonably the closing of the door by the brakeman even though the interval between the calling of the station and the stopping of the train for passengers to alight might be brief. It was a very dark night— so dark that a person could not observe with reasonable distinctness surrounding objects outside the train or the ground at the side of the track. The arc lights which were customarily burning were not in service. There was no proof that the calling of the station was ordinarily followed by two stops, one for the crossing and the other for the station. The attitude of other passengers in the car than Mr. Wolf reasonably suggested to him the thought that the stop was at the station. There was liability, reasonably, for one circumstanced as Mr. Wolf was to be diverted in mind from attention to the fact that it was necessary to stop at the crossing before stopping at the station. We must face the situation pictured by counsel's proposition enlarged by at least all the circumstances mentioned, and from that viewpoint determine whether there was a jury question as to negligence on the part of appellant, and another as to contributory negligence on the part of the deceased.

It is suggested that the negligence alleged was not established, in that there was no proof that the brakeman left the

door open after calling the station, but on the contrary the evidence shows that he closed it. True, the evidence was as claimed, but it is not considered that the allegation in that regard is essential to the cause of action. The dominant circumstances upon which negligence was predicated are that the brakeman called the station without warning passengers that there would be a stop thereafter before the one at the depot platform, the conditions being such that passengers in the exercise of ordinary care, not being so warned, were liable through excusable forgetfulness or otherwise to leave the train at the first stop and where it was dangerous to do so. The calling out of the station, as is usual, preceding the arrival at the place to step from the train, the passing forward by the brakeman immediately after making such call as if in pursuit of his duty to warn the occupants of other cars to be in readiness to alight, the coming of the train to a full stop shortly thereafter without any warning to passengers, as before stated, the darkness of the night, and the unusual condition of the street arc lights being out were the main factors. There was ample proof in respect thereto to carry the case to the jury. Indeed we do not understand the learned counsel for appellant contends, aside from failure to establish all the circumstances alleged as characterizing the negligence charged which we do not deem material, but what the jury were warranted in finding negligence on the part of the appellant on the occasion in question, but it is insisted that it was not actionable fault as to the personal representatives of the deceased, because the deceased was familiar with the local conditions and, therefore, had he exercised ordinary care for his own safety, he would not have been misled into the dangerous step he took. So we pass to the consideration of whether the finding of the jury, that the deceased was free from any want of ordinary care contributing to produce the injury from which he died, has any support in the evidence.

We may well say in passing, to emphasize the foregoing,

that the learned counsel for appellant on the trial freely conceded that if the trainmen misled Mr. Wolf into the belief that the train had arrived at the station when it had not, appellant was guilty of actionable negligence, if Mr. Wolf was so misled without contributory negligence on his part.

It is suggested that Mr. Wolf must have stepped off the train, knowing that he was not at the station, with a view of taking a short way to his home, which was commonly done by persons living in that part of the city wherein he resided, which was west of the crossing; that there is no other reasonable explanation of his movements, since he must have known from his familiarity with local conditions that when the train stopped it was not at the station. There are, it seems, two infirmities in that view: First, the improbability that Mr. Wolf stepped off the train blindly into the darkness, knowing as he must that if the train was not at the station it was liable to be on the trestle, certainly is sufficient to preclude taking the case from the jury in favor of the defendant in respect thereto. Secondly, notwithstanding Mr. Wolf was familiar with local conditions and might have known that the first stopping of the train was for the crossing, he was not bound under all the circumstances to remember all such conditions and the necessity for the first stop, at his peril. If his mind was by any adequate cause momentarily diverted so that the negligence of the appellant became operative while he was taking the course which in his condition of mind the conduct of appellant invited, he was not guilty of contributory negligence. The rule last stated has been often proclaimed by this court and quite decisively in the following language, quoted by respondent's counsel to our attention, from *Collins v. Janesville,* 111 Wis. 348, 87 N. W. 241, 1087:

"Some courts have held that if a person knows of a dangerous defect in a sidewalk he is bound at his peril to remember it [citing authorities]. But this court, in harmony with the weight of authority, holds to the more reasonable and humane

rule that a person may forget the existence of a defect in a street or sidewalk and thereby receive a personal injury, and yet be in the exercise of ordinary care."

True, what a person knows which may affect his personal safety he is presumed to remember in the absence of any circumstance reasonably accounting for his forgetfulness in respect to the matter, but it is so common for one to momentarily forget such a matter, because of his mind being for the time diverted therefrom, that rather slight circumstances have been considered sufficient to carry the question to the jury of whether failure to remember in the given case was consistent with ordinary care.

It was said in *Collins v. Janesville, supra,* in respect to the nature of the presumption that what one knows regarding a condition liable to affect his personal safety he is presumed to have in mind and to be wanting in ordinary care in failing to avoid the danger, that "the presumption is rebuttable and gives way so readily to explanatory circumstances that any reasonable excuse for the forgetfulness is sufficient to carry the case to the jury on the question of plaintiff's contributory negligence."

The following precedents fully illustrate the application of the doctrine stated: In *Wheeler v. Westport,* 30 Wis. 392, a physician on the way to visit a patient in the nighttime, his mind being diverted by reason of conversation with a companion, momentarily forgetting a dangerous place in the highway with which he was perfectly familiar, drove into it and was injured. In *Crites v. New Richmond,* 98 Wis. 55, 73 N. W. 322, the plaintiff stepped into a hole in the sidewalk with which he was familiar, his mind being momentarily diverted by a call to him from a person on the opposite side of the street. In *Cumisky v. Kenosha,* 87 Wis. 286, 58 N. W. 395, the plaintiff was injured by reason of a dangerous ridge of ice on a sidewalk. She knew of the obstruction and had passed over it but a short time before. The only explanation

of her failure to remember and avoid it was that her mind was diverted by the thought of hurrying along to avoid meeting a number of workmen, who were about to leave a shop on her route of travel. In *Petrich v. Union,* 117 Wis. 46, 93 N. W. 819, the plaintiff was injured by reason of the wheel of the wagon in which she was riding dropping suddenly into a gully in the traveled track, with which the plaintiff was familiar. The only explanation of her failure to remember the defect was that she was engaged in conversation with her husband about the farm, and that it was dark. To the same effect are *Strack v. Milwaukee,* 121 Wis. 91, 95, 98 N. W. 947; *Lyon v. Grand Rapids,* 121 Wis. 609, 615, 99 N. W. 311; *Coppins v. Jefferson,* 126 Wis. 578, 105 N. W. 1078.

Applying the foregoing to the facts here it is considered that the darkness of the night, the rain, the absence of the street lights, the sudden call of the station, the movement of the brakeman immediately followed by the stopping of the train, and the movements of other passengers than Mr. Wolf, indicating a purpose to immediately leave the train, were amply sufficient to carry the case to the jury on the question not only of whether the deceased knew where the car was, but whether he ought to have known of it in the exercise of ordinary care. It is within reasonable probability that he was thrown off his guard without fault on his part, amounting to a want of ordinary care, by such circumstances, and that the suggestion to alight held out by the call for the station and the stopping of the train was the producing cause of the mischief.

It is further contended that since there was a light in the depot and two incandescent lights outside, as was the custom, it was contributory fault on the part of the deceased in not observing such a conspicuous object before he stepped off the train; that the absence of the customary depot lights, had the deceased been in the exercise of ordinary care, would have efficiently suggested to him that the train was not at the sta-

tion. Due consideration has been given to that phase of the
case, which is doubtless the most persuasive of any in appel-
lant's favor. It does not seem under all the circumstances to
be so far controlling as to establish contributory negligence of
the deceased as a matter of law. It is very natural for a per-
son riding on a railway train, upon the station to which he is
destined being called, and the train coming to a full stop
shortly thereafter, to suppose, nothing appearing to the con-
trary, that he must alight without delay. Ordinarily he would
be considered wanting in due care if he did not do so. The
absence of any proof here that it was customary to call the
station before the stop at the crossing is a most significant cir-
cumstance. It may well be presumed that there was no such
custom, at least unaccompanied with a notification that the
station would not be reached till the second stop, under such
conditions as existed at the time in question. Such a custom
unless so accompanied, under such circumstances, would be
quite liable, at least as to persons not acquainted with local
conditions, to lead to just such an occurrence as took place.
So it may well be that the calling of the station and what fol-
lowed threw Mr. Wolf off his guard as to whether a stop at the
crossing had been made, or such stop had been neglected, and
caused him to leave his seat and pass to the point of stepping
off the train with an excusable degree of haste and confusion.

When he arrived at such point it is the opinion of the court
upon the evidence that he was not, as a matter of law, bound
at his peril of being successfully charged with contributory
negligence, to hesitate and look for the depot, or observe its
absence before taking the next step. The customary interval
between the stopping and starting of a train at small stations
is often very short. Again, customarily passengers are ex-
pected to promptly leave the train upon its stopping at a sta-
tion so as not to obstruct the way for those who wish to board
it. Further, the deceased was not bound to suppose that his
car was located in front of or in any closer proximity to the

depot than to enable him to safely step to the ground or to the platform. So, under all the circumstances, we cannot reach the conclusion with the clearness requisite to warrant overruling the decision of the trial court, that the deceased was guilty of negligence as a matter of law in not taking an efficient observation respecting the presence of the depot before the fatal step. There is much force in what was said in *Richmond & D. R. Co. v. Smith,* 92 Ala. 237, 9 South. 223, cited and quoted from at length by counsel for respondent:

"Having been induced by the conduct of the company's employees to reasonably believe that the train was at the station, he was authorized to believe that he could descend the step to the ground with safety. The name of the station having been announced it was natural that the passengers destined" therefor "would commence to leave the train as soon as it was brought to a full stop. . . . The train having been stopped at an unusual place, short of the station, it was the duty of those in charge to use all due precaution to protect the passengers from injury, especially when it is dark and the train is stopped on a trestle or other place of danger."

Of course, if the situation at the depot in the nighttime was customarily, and on the night in question, such that upon the train arriving at the proper place for passengers to alight the depot lights would necessarily have challenged Mr. Wolf's attention, and the absence thereof as he was about to take the last step in all reasonable probability would necessarily have challenged his attention, and would have caused him to hesitate and efficiently investigate, had he been in the exercise of ordinary care, the case would be with the appellant, but it is the opinion of the court in view of all the circumstances that he may have been in the exercise of such care and yet have proceeded from his seat to and inclusive of the fatal step without looking for the station lights or his attention being attracted efficiently to the absence thereof. Having been thrown off his guard so that when he started to leave the train he had

reasonable ground to believe he was at the station it was not wholly unreasonable, tested by the standard of ordinary care, for him to complete his purpose to alight without hesitating to take notice of his surroundings. The darkness of the night, the thought that the stop would be brief, and the rain, may reasonably have efficiently influenced him to move rapidly with a view of leaving the train and reaching his home as speedily as practicable, and to take the last step from the car in the full belief that the car was at the station.

Counsel for appellant cites to our attention *East Tenn., Va. & Ga. R. Co. v. Holmes,* 97 Ala. 332, 12 South. 286, as substantially on all-fours with the case in hand. The rule of that case is stated thus:

"Although a passenger may reasonably conclude that he has reached his destination when the name of the station is called and the train comes to a stop, yet, if the circumstances would indicate to a prudent person that the proper stopping place had not been reached, and he voluntarily steps from a moving train in the darkness, he is guilty of such contributory negligence as will defeat a recovery for injuries sustained."

That statement seems sufficient without comment to show that the case comes far short of fitting the situation we have to deal with. True, there is language in the opinion which would support appellant's view if applied here without keeping in view the doctrine of excusable forgetfulness and the circumstance in the cited case that after the train stopped it resumed its course before the passenger left the car, thereby challenging his attention as to the absence of indications of a station. Of course, while legal principles in cases of this sort do not change or bend to fit different situations, the result to which they lead depends upon the facts of the particular case. Often the presence or absence of some particular circumstance turns the scale.

We will not further discuss the case. We have sufficiently given the reasons why, in the opinion of the court, the ques-

tion of whether the deceased was guilty of contributory negligence was for the jury. No good can be accomplished by discussing the numerous authorities cited to our attention and the many others which are at hand bearing some analogy to the case before us. The principles involved are few, simple, and well understood. All of the authorities relied upon by both sides have been carefully examined. When viewed with reference to the exact facts here involved it is believed that they support the conclusion reached. The result of counsel's labor in bringing to the attention of the court such authorities we will preserve. It may be very beneficial to the profession and the court in similar cases. *Mitchell v. C. & G. T. R. Co.* 51 Mich. 236, 16 N. W. 388; *Central R. Co. v. Van Horn,* 38 N. J. Law, 133; *Taber v. D., L. & W. R. Co.* 71 N. Y. 489; *McGee v. Mo. Pac. R. Co.* 92 Mo. 208, 4 S. W. 739.; *Memphis & L. R. R. Co. v. Stringfellow,* 44 Ark. 322; *Terre Haute & I. R. Co. v. Buck,* 96 Ind. 346; *Miller v. East Tenn., Va. & Ga. R. Co.* 93 Ga. 630, 21 S. E. 153; *Southern Kan. R. Co. v. Pavey,* 48 Kan. 452, 29 Pac. 593; *Coe v. L. & N. R. Co.* (Ky.) 78 S. W. 439; *Laub v. C., B. & Q. R. Co.* 118 Mo. App. 488, 94 S. W. 550; *Chesapeake & O. R. Co. v. Smith,* 103 Va. 326, 49 S. E. 487; *Baltimore & P. R. Co. v. Jean,* 98 Md. 546, 57 Atl. 540; *Columbus & I. R. Co. v. Farrell,* 31 Ind. 408; *Wood v. L. S. & M. S. R. Co.* 49 Mich. 370, 13 N. W. 779; *Hemmingway v. C., M. & St. P. R. Co.* 72 Wis. 42, 37 N. W. 804; *Stutz v. C. & N. W. R. Co.* 73 Wis. 147, 40 N. W. 653; *McDermott v. C. & N. W. R. Co.* 82 Wis. 246, 52 N. W. 85; *Werner v. C. & N. W. R. Co.* 105 Wis. 300, 81 N. W. 416; *Ellis v. C., M. & St. P. R. Co.* 120 Wis. 645, 98 N. W. 942.

*By the Court.*—The judgment is affirmed.

CASSODAY, C. J., took no part.