W. A. HOOKS *v.* ALABAMA & VICKSBURG RAILWAY CO.

RAILROADS.· *Station announced and train stopped before reaching same.*
  *Injury to alighting passenger.    Case.*

  When the approach of a railway passenger train to a place at which
    such trains usually stop is announced by the brakeman calling the
    name of the place, and the train is, in fact, stopped shortly after-
    wards, a passenger, who is a stranger to the locality, and has been
    informed by the conductor that such announcement would be
    made, and the train stopped at the place called, on that trip, may
    reasonably conclude, when the train stops, that he has arrived at
    such place, it being in the night, and dark; and, if such place has
    not been reached, but the train stopped at a point where the
    ground is rough and uneven and covered with railway switches,
    and the passenger, who, upon the announcement being made, has
    gone upon the platform in anticipation of the stop, proceeds, when
    it occurs, to descend from the car, and, before he has completely
    alighted therefrom, is injured by a sudden forward movement of
    the train, the railway company is liable in damages for the in-
    juries sustained.

FROM the circuit court of Scott county.

HON. A. G. MAYERS, Judge.

The declaration avers that the plaintiff was a passenger on
one of defendant's east bound trains, having purchased a ticket
from Forest to Meridian; that he told the conductor that he
desired to get off at "the shops," a place on defendant's line
about a mile west of the union depot at Meridian; that the con-
ductor said he could do so, that the train would stop there, and
that he would know when the place was reached by the brake-
man calling out "shops;" that it was in the night, and dark,
and, after the expiration of about the time it would take to run
that distance, the brakeman called out, in the coach in which
he was riding, "Shops! shops!" that the train began to slow
up, and believing, as he had the right to do, that the train was
about to stop at "the shops," he made his way to the door to

alight therefrom when it should stop; that as he reached the platform the train did come to a stop, and he, supposing, as he had a right to do, that the train was at "the shops," at once alighted from the car in which he was riding; that the train had not reached "the shops," but was a distance of several hundred yards therefrom, the point where he alighted being rough and uneven ground and covered with railway switches; that before he was well upon the ground, the train moved up with force and struck him against the shoulder knocking him to the ground, when his left leg fell across one of the rails, and was run over and crushed by a wheel of the cars in such wise as to necessitate amputation, by reason of which negligence of defendant's servants he was damaged, etc.

The following grounds are assigned in defendant's demurrer to the declaration:

1. The declaration shows that the plaintiff's contract of carriage was for Meridian, and not the " shops."

2. The plaintiff attempted to disembark before he reached the "shops," and before the train had stopped.

3. The plaintiff was the victim of his own misconception of facts, and cannot, because of his ignorance, impose liability on defendant.

4. The call of the brakeman was for the "shops," and plaintiff should have waited until the train stopped at the "shops," or, if he was ignorant, should have made inquiry of the brakeman or others.

5. The presence of the switches, want of lights and absence of any station house should have admonished him that the train was simply waiting for the switch to be thrown in order to reach to the "shops."

The demurrer was sustained; and plaintiff, declining to avail of the leave given to amend, prosecuted this appeal.

*McIntosh & McIntosh,* for the appellant.

As to the first ground of demurrer, it may be answered that,

while the plaintiff's ticket was for Meridian, and not the "shops," the contract of carriage, as made by the ticket, was changed by agreement with the conductor to the effect that the plaintiff should be allowed opportunity to get off at the "shops." Whitaker's Smith on Neg., 297; Deering Law of Neg., § 89.

The second ground of demurrer, that the plaintiff attempted to disembark before he reached the "shops," is without merit, in view of the allegations of the declaration. The complaint is not that of one injured while attempting to alight from a moving train.

The third ground of demurrer, that the plaintiff was the victim of his own misconception of facts, and cannot, because of his ignorance, impose liability on defendant, brings up the question of negligence. On the averments of the declaration he was the victim of the negligence of defendant's servants, whereby he was misled to his injury, and the question of negligence so arising should have been determined by the jury. Pierce on Railroads, 311, 313; *Pennsylvania Railroad Co.* v. *Hoagland* (Ind.), 3 Am. & Eng. Ry. Cases, 436; *Southern Railroad Co.* v. *Kendrick*, 40 Miss., 374; *Central Railroad Co.* v. *VanHorn*, 38 N. J. L., 133; *Columbus & Indianapolis Railroad Co.* v. *Farrell*, 31 Ind., 408; *Baltimore, Pittsburg & Chicago Railroad Co.* v. *Pixley*, 61 Ind., 22; *N. J. & G. N. Railroad Co.* v. *Hurst*, 36 Miss., 660; *M. & C. Railroad Co.* v. *Whitfield*, 44 Miss., 466; *Pennsylvania Railroad Co.* v. *Hoagland*, 78 Ind., 203; Thompson on Carriers of Passengers, 229, *et seq.*

The fourth and fifth grounds of demurrer are merely argumentative.

*W. L. Nugent*, for the appellee.

The declaration places the case upon the calling of "shops" by the brakeman, the slowing up of the train, and the belief on the part of appellant that the train had stopped at the

"shops," when in fact it had not.   Had he been accustomed to railroad travel, he would have known that the call "shops" was intended to give warning to passengers to get ready to disembark, and that when the "shops" were reached in fact, a second announcement would have been made.   He was in a hurry to get off, and started to the door, and reached the platform while the train was in motion.   The train made a short stop to get in on the switch leading to the "shops," and he believed it had reached the station, though the night was dark, and there was no light anywhere, and nothing was visible but the switches, tracks, and rough, uneven ground.   What the appellant believed can cut no figure in the case.   The question is, was the appellee in anywise negligent or careless in the discharge of its duties to the traveling public, or to the appellant?

The general rule seems to be this: It is the duty of a railroad company to have the stations announced as the trains approach them, and to stop the cars long enough at the platform to enable passengers to alight in safety.   Beyond this the law does not compel the carrier to go.   Before reaching the station the movement of the train is wholly left to the discretion of the agents in charge of it, and the fact that it halts short of a station is no reason for a passenger's alighting with his eyes wide open, to discover that the station had not, in fact, been reached. *Siner* v. *Railroad Co.*, L. R., 3 Exch., 150; L. R., 4 Exch., 117.   The appellee had not completed the duty it owed the appellant as a passenger, if any, and had he waited until the "shops" were actually reached, he would readily have ascertained or been apprised of the fact.   He would have seen the lights, the grounds, the platform on which to alight, and the agents of the appellee in charge of the station.   *Nagle* v. *Railroad Co.*, 25 Pac. Rep., 1106 (88 Cal., 86).

It will be noted, in this case, that all the physical surroundings should have admonished appellant he was not at the station. The night was dark, there were no lights or platform, the ground

was uneven and covered with switches or tracks. If from the announcement of the brakeman he reasonably concluded the train had arrived at the station at which he desired to disembark, and that he was justified in an attempt to get off, such a conclusion could not lawfully be indulged, if the circumstances or indications were such as to show to any person of reasonable prudence and ordinary observation that the train had not reached a platform or proper stopping place. *Railroad Co.* v. *Holmes*, 97 Ala., 332 (12 So. Rep., 287); *Smith* v. *Railroad Co.*, 88 Ala., 538; *Railroad Co.* v. *Smith*, 92 Ala., 237.

There is a difference between calling a station by a train officer and calling " all out " for the station. The latter may be regarded as a direction to passengers to leave the cars, with a guaranty that it is safe to do so; but the former cannot be regarded as anything more than informing the passengers of the name of the station which the train is approaching, and will stop at. It does not relieve the passengers of all the care that they would otherwise be required to exercise. *Gonzales* v. *New York & Hudson River R. R. Co.*, 1 J. & S. (N. Y.), 57. See, also, the very pertinent language employed in *Mitchell* v. *Railroad*, 16 N. W. Rep., 389 (51 Mich., 236), and the cases there cited.

The appellee had done nothing out of the usual course of business; indeed, had done what a proper regard for passengers requires. It had informed them the train would stop at the " shops," and warned them to get ready. When the train did reach the " shops," the call would have been repeated with emphasis: "All out for ' shops! ' " The difficulty is, the appellant was not accustomed to railroad travel, and failed to wait. He arose from his seat while the car was in motion, which he should not have done, and the resulting injury is his own fault. It was negligence for him to attempt to get off unless sure, from all the circumstances, that the stop was permanent for the purpose of discharging passengers. *Dunn* v. *Railroad Co.*, 20 Phila., 258.

Argued orally by *W. L. Nugent*, for the appellee.

WHITFIELD, J., delivered the opinion of the court.

The principle, with its limitations, which must control this case is well put by Clopton, J., in *Smith* v. *Ga. Pa. R. R. Co.*, 88 Ala., 540, where the court say: "A railroad company, being a carrier of passengers, is under obligation to use reasonable care to transport them safely. This general duty includes the specific duty not to expose them to unnecessary danger, and not intentionally or negligently to mislead them by causing them to reasonably suppose that their point of destination has been reached, and that they may safely alight, when the train is in an improper place. Calling out the name of the station is customary and proper, so that passengers may be informed that the train is approaching the station of their destination, and prepare to get off when it arrives at the platform. The mere announcement of the name of the station is not an invitation to alight, but, when followed by a full stoppage of the train soon thereafter, is, ordinarily, notification that it has arrived at the usual place for landing passengers. Whether the stoppage of the train, after such announcement and before it arrives at the platform, is negligence, depends upon the attendant circumstances. The rule is aptly expressed in *Bridges* v. *Railway Co.*, L. R., 6 Q. B., 377, by Willes, J.: 'It is an announcement by the railway officers that the train is approaching, or has arrived at, the platform, and that the passengers may get out when the train stops at the platform, or under circumstances, induced and caused by the company, in which the man may reasonably suppose he is getting out at the place where the company intended him to alight. To that extent calling out is an invitation.'" And the court then, after a review of many leading cases, including cases relied on at bar on both sides, thus sums up: "They all concur that neither the announcement of the station nor stopping the train before it arrives at the platform, if required by law or usage, for the

purpose of avoiding collisions or other accidents, is negligence *per se.* . . . It will be observed that, in each of the cases in which it was ruled there was evidence of negligence sufficient to be submitted to the jury, there existed the element that, by reason of the want of light, or other things, the passenger may have been deceived into supposing the train had arrived at the platform or place where it was intended he should alight. Comparing all the cases, we deduce that, when the name of the station is called, and, soon thereafter, the train is brought to a standstill, a passenger may reasonably conclude that it has stopped at the station, and endeavor to get off, unless the circumstances and indications are such as to render it manifest that the train has not reached the proper and usual landing place.'' And the company was held not liable in that case, under this rule, upon the express ground, as plainly shown in *Richmond & D. R. R. Co.* v. *Smith,* 9 So. Rep., 223, where this case is reviewed, that the train was '' stopped in a cut three hundred and sixty feet long, and from five to eleven feet deep, in daylight, about one o'clock P.M.,'' when, of course, plaintiff saw he was not at his proper landing place.

The rule thus announced by the Alabama supreme court commends itself to us as practical and accurate, if before the word '' manifest'' we insert the word ''reasonably.'' In the nature of things, it will nearly always be true that the question of negligence on the part of the company must, on the varied elements of fact present in each particular case, be submitted to the jury. In Hutchinson on Carriers, § 616, it is said, broadly: '' The question of negligence in every instance of the kind is one of fact for the jury.'' And so, in Wood's Browne on Carriers, 507, it is said: '' But the question of what circumstances amount to an invitation to alight is clearly one for a jury, and although there seems to have been difficulty felt in time past by some of our judges in reference to this point of law, it seems impossible that any further doubt should exist.''

So in the finely reasoned case of *Railroad Co.* v. *Buck*, 96 Ind., 346.

The authorities abundantly support these text writers, and illustrate, in a multitude of instances, the necessity of nearly always submitting the question in actions of this kind to the jury.

In *Buck's case, supra*, the train stopped over a trestle, and the night was dark, and there were no lights, and the case was sent to the jury, and the company held liable though the plaintiff lived near and knew the surroundings, liability being pressed here very far.

In *Phil. R. R. Co.* v. *McCormick*, 124 Pa. St., p. 434, the conductor passed through the car, and announced that passengers would change cars at Wawa. Soon after the cars stopped, not at Wawa, but on a bridge, and the plaintiff, it being dark, stepped off and was killed. The court say the case was one for the jury, and observe: "The deceased had a right to suppose that the train had stopped at the station. Having stopped at a place of peril for passengers to alight, at a time when they had a right to suppose, from the notice previously given, that the train had reached the station, proper attention to the safety of the passengers would have required some warning to them to retain their seats."

In *Central Railroad Co.* v. *VanHorn*, 38 N. J. Law, 137, a very instructive case, the name of the station was called out, the cars were stopped, it being very dark, and the plaintiff, having gone out on the platform, was thrown therefrom by the sudden violent starting of the cars, and Chief Justice Beasley says: "The negligence here complained of was the giving of the false intelligence that the cars had arrived at the station, and by that means inducing the plaintiff to go upon the car platform and endeavor to alight. The court would not be warranted in saying that it is not negligence to give notice of the approach to a station and then to stop the train short of such station, in the night time. Such a course would naturally

tend to jeopard passengers, for it would induce them to be-
lieve that they had arrived at the station designated, and they
would, in the ordinary course, go to the car platform.    At
night this must be the inevitable result." And a demurrer was
overruled.

In *Pennsylvania Railroad Co.* v. *Hougland*, 3 Am. & Eng.
Ry. Cases, 439, plaintiff was told by the conductor that the
next station would be hers.    The train stopped ten miles short
of that station, in the dark, and the plaintiff, who "had never
passed over any part of said railroad," relying upon the con-
ductor's statement, got out and suffered injuries from exposure
to cold, and the case went to the jury and the company was
held liable.

In *Memphis & Little Rock Railroad Co.* v. *Stringfellow*, 44
Ark., 330, the name of the station was called, the cars stopped
short of the station, no notice was given passengers to retain
their seats, the night was dark, and the plaintiff stepped off
after the train began to move, and the case went to the jury
and the company was held liable.    Another case in which lia-
bility was pressed very far.

In *McNulta* v. *Ensch*, 24 N. E. Rep., 631, the station was
called out, the cars stopped short of the station, then started
suddenly, and plaintiff was injured, and the court said: "The
company's duty to the plaintiff, whom it had induced to believe
that the train had reached the point at which he was to depart
therefrom, was in respect of the place where the train first
halted, and not in respect of the place where it finally stopped,"
and the case went to the jury and the company was held liable.
So in *Columbus & Indiana Central Railroad Co.* v. *Farrell*,
31 Ind., 408, the station was called, and the cars stopped,
not at the station, but over a culvert, and it was so dark the
plaintiff could not see the culvert, and stepped off into the cul-
vert, and the case went to the jury and the company was held
liable.

In *Railroad Co.* v. *Eckford*, 71 Tex., 274, there were the

same facts, with the further fact that the plaintiff had been to the place ("Cotulla") for which he was ticketed, twice before, but both times at night, and the company was held liable.   So in *Griffith* v. *Missouri Pacific Railway Co.*, 98 Mo., 174. So in *Philadelphia, etc., R. R. Co.* v. *Edelstein*, 16 Atl. Rep., 847, where the night was "dark, rainy and freezing." See, also, 2 Wood on Railways, § 305; Hutchinson on Carriers, § 612–615, with the notes, and especially Thompson on Carriers of Passengers, § 18, p. 229.

We refer to only two other cases, *Wood* v. *Railway Co.*, 49 Mich., p. 370, strikingly like the case at bar, the court saying: "Upon the stopping of the train, he had then a right to get off, whatever his position up to that time may have been, and the danger of his position, up to then, cannot be charged against him, if he then, in the usual and customary manner and place, attempted to get off.   It might be argued [as is argued by appellee in this case] that it was his duty to remain seated in the car until the train actually should stop, and that, had he done so, this injury could not have happened.   In another case, the argument might be carried still further, and it be said that a passenger on a seat near the door of the car, if injured in attempting to get off, could not recover, because he might, if seated nearer the middle of the car, have avoided the danger. In my opinion, all such matters must be considered as too remotely connected with the injury to affect the plaintiff's right of recovery."

The other case is *Taber* v. *D. L. & W. R. R. Co.*, 71 N. Y., p. 493.   The plaintiff was "not familiar with the stopping place, but knew it was the next station after Chenango." She knew when the train passed that station, "and was justified in believing" the next would be hers.   The train, after "the proper interval to enable it to run to" her station, stopped. The night was dark, the train came to a full stop short of her station, the name of the station having been called out.   The plaintiff, while on the second step of the car, descending, was

thrown off and injured, by a sudden, violent movement of the car.  The court say: "The plaintiff was justified, under the circumstances, in supposing that she had reached her destination, and that the train was at the place where passengers were to alight; at least, the jury might well have come to the conclusion that she was free from negligence.  The defendant was bound to take notice of the circumstances—viz.: That the station had been announced; that passengers for Willard's would naturally assume that the train, when it stopped, was at the station, and at the place where they were to alight; that, by reason of the darkness of the night, and the absence of a depot or other external indications of a station, passengers, especially those not familiar with the surrounding objects, would not, by observation, know that the train had run beyond the highway crossing; that passengers, in the absence of notice, would, according to the usual custom, start to leave the train as soon as it came to a standstill.  In view of these circumstances, it was a question for the jury whether the defendant's servants should not, as a reasonable precaution, have given notice to passengers that the train was to back."  See, as in some measure pertinent, *Kendrick* v. *So. R. R. Co.*, 40 Miss., 374.

We have examined carefully all the authorities cited by learned counsel for appellee.  *Nagle* v. *Cal. So. R. R. Co.*, 88 Cal., 86, is the case of one who had been on the journey before, in the day time, and knew all about the place at which he got off.  Moreover (p. 91) "the plaintiff had no intimation from the trainmen that this was his stopping place, or that he should get off" there.  The case has no sort of application.  *East T. N. & G. R. Co.* v. *Holmes*, 97 Ala., 332, is the case of one (see page 337, at the bottom) who leaped from a moving train because he was being carried beyond his destination.  A wholly dissimilar case.  And *Mitchell* v. *Chicago & Grand Trunk Railway Co.*, 51 Mich., 236, s.c. 47 Am. Rep., 566, is shown in *M. & L. R. R. R. Co.* v. *Stringfellow*, 44 Ark., 330, to rest upon the facts that the injury occurred in the day-

time, and that the conductor had notified the plaintiff he would "escort her to the depot of the connecting line." The case is, therefore, not in point. This is not the case of one leaping from a moving train, nor of one having an agreement with the conductor to put him off at a place at which the regulations of the company forbade him to stop.

What, then, is this case? This: The plaintiff was a stranger, his home in Leake county; he was told by the conductor that the train did—that is, usually, and would, that is, on this trip —stop at the "shops," but he would know that the train was at the "shops" by the brakeman coming through the car, and calling out "Shops! shops!" The locomotive, after a proper interval in which to run from Forest to the "shops," whistled, and the brakeman came through the car where plaintiff was sitting, and called out "Shops! shops!" The plaintiff got up, and went out on the platform; the cars came to a full stop. Plaintiff, it being in the night and very dark and there being no lights, got out then, and, before he was well upon the ground, the cars were jerked suddenly and violently forward, and he was knocked down and injured. The ground was "uneven and rough, and covered with many switches and tracks, though it is not alleged that he discovered this before the injury. The place at which the cars stopped was several hundred yards from the "shops." Plaintiff's cause of action is thus placed on the invitation and inducement held out to him to alight, by the conduct of the conductor and the brakeman, in the night and darkness, he being a stranger, and his being misled thereby, without fault on his part, into the reasonable belief that the cars had stopped at his point of destination.

The preceding cases show that there may be circumstances of time—as, whether it was day or night, and, if night, whether there were lights; circumstances of place—as, whether the stopping of the train be over a culvert, on a trestle, at a place safe or perilous for disembarking; circumstances affecting the person—as, his knowledge of the surroundings, rain, storm,

etc. Superadd to all these the effect upon the question of the railroad company's liability, of the acts and conduct of its employees in the premises, and it will be very manifest how essentially, in nearly all such cases, the question of negligence is one for the jury.

It is apparent that the case stated by appellant is much stronger than many in which liability has been enforced. In the light of the rule of law applicable to this class of cases, and of its limitations, we are of opinion that the demurrer should have been overruled.

*Judgment reversed, demurrer overruled and cause remanded.*

COOPER, C. J., specially concurring.

I concur in the result announced in this case, with the reservation that I do not approve of the language of the courts in some of the cases from which my brother Whitfield cites nor of some of the decisions themselves. I think the simple rule is, that where the court cannot, upon the stated or proved facts, declare, as matter of law, that negligence has or has not been shown, the case should be passed on by a jury.