KATE DAVIS, AS ADMINISTRATRIX OF GRANT L. DAVIS, DECEASED, PLAINTIFF, *v.* LEHIGH VALLEY RAILROAD COMPANY, DEFENDANT.

*Negligence — stepping off a train when it is not at a station — duty of the railroad corporation to passengers — contributory negligence.*

Pursuant to the statute which requires a railroad train about to cross the tracks of another railroad at grade to come to a full stop, a train of the Lehigh Valley Company stopped upon a bridge belonging to that road, which was within the statutory distance of such a crossing. The train then began to move slowly on, when a passenger, although no announcement had been made to the passengers that a station had been reached, left the car, stepped off into the darkness, fell through the bridge and was drowned.

In an action brought against the corporation to recover the damages claimed to have resulted from its alleged negligence:

*Held,* that it was not the duty of the company to warn passengers, when the train was not at a station, that they must not leave the car.

That the act of the deceased was careless and constituted contributory negligence.

EXCEPTIONS of the plaintiff Kate Davis, as administratrix of Grant L. Davis, taken upon a trial had at the Cayuga Circuit before the court and a jury, at which a motion for a nonsuit was granted and the exceptions were directed to be heard in the first instance at General Term.

*Coburn & Hunter*, for the plaintiff.

*Tabor & Brainerd*, for the defendant.

LEWIS, J. :

The deceased was a passenger on defendant's road from Weedsport to Auburn on the evening of February 19, 1890. The distance between the two places is ten miles. Before reaching the depot in the city of Auburn, from the north, the defendant's road crosses a bridge which spans the Owasco outlet. It also crosses the tracks at grade of the New York Central and Hudson River Railroad Company. This grade crossing is between the bridge mentioned and the depot. The depot is about one-half mile south of this bridge by way of the railway.

The train on which the deceased was riding on the evening in question stopped, as it was required to do by statute, before crossing the Central tracks. In coming to the halt, the car on which the deceased was riding was on the bridge. The deceased, supposing the train had arrived at the depot, went out upon the platform of the car where he had been riding and went down the steps of the car upon the westerly side of the train, stepped off and fell into the outlet, and was drowned. The evening was very dark, so dark that the deceased was unable to see where he was stepping. There was an electric light upon the north side of the bridge and one upon the south side. They were so located as to throw light upon the surface of the bridge upon the easterly side of the train. The westerly side of the train was in the shadow. The train remained standing on the bridge about five minutes, presumably waiting for the signal to pass over the crossing mentioned.

The statute provides that " all trains and locomotives on railroads crossing each other on the same level, shall come to a full stop before crossing, not less than two hundred nor more than eight hundred feet from said crossing, and shall then cross only when the way is clear and upon a signal to do so from a watchman stationed at the crossing." (Chap. 329, Laws of 1884, § 5.)

The evidence tended to show that the train, before stopping upon the bridge, had been passing through thickly settled and lighted streets, and that circumstance, and the fact that the train stopped,

probably led the deceased to think that he had arrived at the station.

Nothing was said or done by the hands on the train to warn passengers not to leave the train while it was thus standing upon the bridge.

The defendant's train coming into Auburn from Weedsport usually stopped upon this bridge and waited for a signal to pass over the crossing mentioned. It sometimes stopped just north of the bridge for that purpose and passengers occasionally took advantage of the stop and alighted from the train at this point. There was a plank-walk crossing the bridge longitudinally upon its easterly side. It was constructed for the convenience of the defendant's employees only, though the evidence tended to show that passengers sometimes used it in leaving the train. There was no walk nor railing to the bridge on the westerly side. The westerly side of a passenger car when upon the bridge extended out nearly flush with the westerly ends of the ties.

The circumstances of the defendant leaving the train and of the accident were related by Mr. Fay Cutler, a witness called by the plaintiff. He was the only witness who testified upon the subject. He stated that he rode in company with the deceased from Weedsport to Auburn; had been conversing with him and accompanied him out of the car on this occasion. Mr. Cutler, in describing the occurrence, testified : " When he got out on the platform he turned around and shook hands with me. * * * He says ' Good night,' and I says ' Good night.' * * * It was dark; quite dark. Of course, I could see between the two cars, but to look off each way I could not see ; I couldn't see off to the west side. After doing what I have stated, Mr. Davis got off, took a step down — one step — and got hold of the iron that is up and down on the end of the car with his right hand ; he took hold of that railing with his right hand ; he had his grip in his left; then he stepped down, and then I said, ' Good night,' and he said ' Good night ; ' and then he stepped down one step, took hold of the iron, and then, just then, the train started ; he stood on the bottom step as the train started ; he swung off just as I would step off, or anybody ; right off as though he was going off on the ground ; the train had just started, hadn't gone over a foot or two ; it was moving slow ; I couldn't see anything on either side as I looked off ; it was

cold enough so I needed an overcoat on, and quite a chilly wind; it didn't appear to be stormy; I could hear the wind was blowing some."

At the close of the plaintiff's evidence the court, on motion of the defendant, directed a nonsuit, and ordered the exceptions be heard at the General Term in the first instance.

Careful examination of this case has not disclosed to us any question of fact which should have been submitted to the jury. It was not negligence for the defendant to stop the train in the place it did on this occasion. It had a right to select the place of stopping, if within the statutory limits, and there is no complaint in that regard. It had a right to delay the train for such length of time as was necessary before crossing the Central tracks.

It cannot be successfully claimed that it is the duty of those in charge of a train to warn passengers not to attempt to leave a train when it is not at a station unless they have said or done something calculated to lead passengers to think they have arrived at the station. In the running of trains of cars exigencies frequently arise requiring them to come to a halt when not at stations. It is incumbent upon the passengers to be vigilant and attentive and not attempt to alight until they are in some way informed that their train has arrived at the station. The plaintiff failed to show the defendant guilty of negligence causing the death of the intestate. Plaintiff also failed to show the deceased free from negligence contributing to his death. The circumstances under which he left the train conclusively show him to have been guilty of surprising carelessness and thoughtlessness. Without notice that the train had arrived at the station, and in the absence of the usual lights and other evidences that they were at the station, he heedlessly stepped off of the car into the darkness, not knowing where he was going and while the car was in motion.

It must be held, we think, that under these circumstances the deceased was guilty of negligence contributing to his death. We fail to find among the cases cited by the plaintiff's counsel any one sustaining his contention here. In the cases cited where the company was held to be liable it was made to appear that those in charge of the train had, in some manner, led the passenger to understand that he had reached the station.

The deceased was a commercial agent, accustomed to travel upon

the railroads, and must have known that it was the custom of the railroad officials to notify passengers when they arrive at a station, and there being an absence of proof that any such announcement was made on this occasion, leaving the train as he did was a negligent act. Plaintiff failed to make a case. We find no errors in the rulings of the court at the trial.

Motion for a new trial should be denied, and judgment ordered for the defendant upon the nonsuit.

Dwight, P. J., and Macomber, J., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on the nonsuit.