MYRON J. BUTLER *vs.* ST. PAUL & DULUTH RAILROAD Co.

Argued Nov. 7, 1894.   Reversed Nov. 16, 1894.

No. 8966.

**Passenger alighting from a moving train.**

Except under peculiar or exceptional circumstances, it is negligence for a passenger to attempt to alight from a moving railway train.

**The facts justified an instruction to the jury to find a verdict for defendant.**

*Held* that, under the facts of this case, it was not error to instruct the jury that plaintiff could not recover if the accident occurred while he was in the act of getting off the car while in motion.

Appeal by defendant, St. Paul and Duluth Railroad Company, from an order of the District Court of Ramsey County, *Chas. E.*

*Otis*, J., made March 8, 1894, granting plaintiff, Myron J. Butler, a new trial after verdict against him.

The plaintiff, a carpenter sixty four years old living at Lake Shore station on defendant's railroad, took a passenger train at half past two o'clock in the afternoon December 14, 1892, at White Bear Lake to ride to his home station a half mile distant.   He bought no ticket. The company did not sell tickets to that station.   He paid no fare. He did not see the conductor while on the train.   This train did not ordinarily stop at Lake Shore.   It did so only in case the engineer was signalled to stop by the station agent or by the conductor on the train.   The plaintiff told a brakeman on the train that he desired to get off at Lake Shore and supposed he would give the signal and that the train would stop.   The train slowed down somewhat as it approached the station, but did not stop.   Plaintiff was unincumbered by bundle, umbrella or grip sack and went upon the front platform of the passenger car and down onto the last step ready to alight. But when the train passed the station without stopping, he was either jerked off or he jumped off at a point about a hundred feet beyond the station and fell on the frozen ground, and suffered a compound comminuted fracture and dislocation of both bones of the left forearm.   He brought this action to recover damages.   Defendant answered denying negligence on the part of its servants and alleging contributory negligence on the part of the plaintiff.   After the evidence was submitted the Judge charged the jury as follows:

The plaintiff claims that he boarded the train and notified the brakeman in charge that he desired to get off at Lake Shore station. That the brakeman gave him to understand that the train would be stopped.   That as the train approached the station it began to slow up as if for the purpose of stopping, and that thereupon he went upon the platform of the car and stepped upon the first or second step for the purpose of getting off as soon as the train came to a stop, knowing that under the circumstances it would halt but a moment. That while in this position the train came nearly to a standstill, and then without fully stopping, was started ahead again with a violent jerk or motion, which threw the plaintiff down or caused him to lose his balance.   That he clung to the railing for a time, but seeing that the train was increasing its speed, and being unable to regain his

footing upon the steps, dropped himself from the car, and thus received the injury of which he complains.

The defendant on the other hand claims that the plaintiff failed to notify those in charge that he desired to stop at Lake Shore station. That they received no notice of his intention.    That in approaching this station they did decrease the speed of the train some, but only sufficient to ascertain whether there was any signal to stop.    That before reaching the platform, seeing no signal to stop, the train increased its motion, and was going at the rate of ten miles an hour, and that this speed was increased until the time the plaintiff dropped from the car.    That the plaintiff took the chances of dropping or throwing himself from this train while it was going at the rate of at least ten miles an hour; and that under any circumstances he attempted to get off while it was in motion, and that being so, claims, as is the law, that he cannot recover.

If this accident occurred while the plaintiff was in the act of getting off the car while it was in motion, then he cannot recover.

The plaintiff excepted to the last paragraph of this charge.    The jury returned a verdict for the defendant.    The plaintiff moved for a new trial for errors of law occurring on the trial and excepted to by him.    The court, deeming the instruction so excepted to, erroneous and that it should have been left to the jury to say whether alighting from the car while in motion was under the circumstances a negligent act, ordered a new trial.    From this order defendant appeals.

*J. D. Armstrong* and *Bunn & Hadley*, for appellant.

This case does not involve the broad question whether jumping from a moving railroad train is of itself contributory negligence. Whatever might be said one way or the other on that question, we shall not be led astray from the real point of this case by discussing it.    It may safely be conceded that there are situations and circumstances which excuse a passenger in attempting to alight from a moving train.    But the charge of the court below was that under the particular facts of this case it was negligence for Mr. Butler so to do.    On motion for a new trial the court concluded that under the particular facts of this case it was not necessarily negligent for

him so to do, and that a new trial ought to be granted. Not because the verdict was wrong, or was against the evidence, or because the court in its discretion thought a new trial ought to be granted, but on the narrow ground that the court had committed this error in its charge. If the charge was correct, the order must be reversed.

There are two and only two admissible theories as to how the accident happened. The jury has found by its verdict that the defendant's theory is the true one, and the plaintiff's untrue. The court charged that if the plaintiff's theory were found to be true, he ought to have a verdict, while if the other theory were found to be true, the defendant ought to have a verdict.

It is absolutely beyond dispute and is testified to by the plaintiff himself that the injury occurred about half past two o'clock in the day time; that he was in the full possession of his faculties; that he was not invited or instructed by any train employee or other person to jump off; that his attention was not diverted or distracted; that no railroad employee knew of his being on the platform or the platform step at any time. There was no station platform where he attempted to get off, and he had to jump from the car step to the ground.

If under these circumstances a man does not voluntarily assume his own risk when he attempts to jump from a moving train, the ruling of the court below ought to be affirmed; but it ought to need no discussion or citation of cases to show that this is not the law. We think there are no authorities, ancient or modern, which decide that under such facts a jury may decide that the plaintiff was in the exercise of due and reasonable care. In the absence of any peculiar circumstances excusing such an act, the mere fact of getting on or off a moving train, irrespective of the speed of the train, is negligence, which precludes the plaintiff from recovering damages for an accident which he would not have suffered except for such an attempt. *Gavett* v. *Manchester & L. R. Co.*, 16 Gray, 501; *Harvey* v. *Eastern R. Co.*, 116 Mass. 269; *Solomon* v. *Manhattan Ry. Co.*, 103 N. Y. 437; *Secor* v. *Toledo, P. & W. R. Co.*, 10 Fed. Rep. 15; *Jewell* v. *Chicago, St. P. & M. Ry. Co.*, 54 Wis. 610; *Ohio & M. Ry. Co.* v. *Stratton*, 78 Ill. 88.

The learned Judge below relied for his ruling on the case of *Jones* v. *Chicago, M. & St. P. Ry. Co.*, 42 Minn. 183. This case, as it seems

to us, is very far from supporting the ruling but is opposed to it, and authority for overruling his decision.    The same remarks are applicable to the case of *Sahlgaard* v. *St. Paul Street Ry. Co.*, 48 Minn. 232.

*F. G. B. Woodruff*, for respondent.

It is not negligence *per se* to alight from a moving train and plaintiff's attempt to do so under the circumstances of this case was not. The question should have been left to the jury, and it was for them to determine whether the danger was so imminent, and the hazard so great, that a careful, prudent man would not have made the attempt.    The vast weight of modern authority and the law of this state is to the effect that it is not negligence *per se* to step from a slowly moving train.    Whether the act is or is not negligent depends upon the peculiar circumstances of each case and whether such circumstances are favorable or unfavorable.

Each case cited by appellant is distinguished from this one and has some element that this case has not.    We ask a consideration of the following cases, in many of which the facts are almost identical with the claims of the plaintiff in this case.    All hold that the question of negligence in alighting from a moving train is for the jury, and the act itself is not *per se* negligence. . *Jones* v. *Chicago, M. & St. P. Ry. Co.*, 42 Minn. 183; *Sahlgaard* v. *St. Paul City Ry. Co.*, 48 Minn. 232; *Carr* v. *Eel River & E. R. Co.*, 98 Cal. 366; *Louisville, E. & St. L. R. Co.* v. *Bean*, 9 Ind. App. 240; *Cousins* v. *Lake Shore & M. S. Ry. Co.*, 96 Mich. 386; *Union Pac. Ry. Co.* v. *Porter*, 38 Neb. 226; *Louisville & N. R. Co.* v. *Crunk*, 119 Ind. 542; *Fulks* v. *St. Louis & S. F. Ry. Co.*, 111 Mo. 335; *Omaha Street Ry. Co.* v. *Craig*, 39 Neb. 601 ; *Doss* v. *Missouri & C. R. Co.*, 59 Mo. 27; *Eppendorf* v. *Brooklyn City & N. R. Co.*, 69 N. Y. 195; *Shannon* v. *Boston & A. R. Co.*, 78 Me. 52; *Johnson* v. *West Chester & P. R. Co.*, 70 Pa. St. 357.

In this case there was testimony tending to show that at the time plaintiff attempted to alight the train was moving very slowly, and had come almost to a stop.    It appears to us that the language used in *Jones* v. *Chicago, M. & St. P. Ry. Co.*, 42 Minn. 183, is decisive of this case.    The testimony shows that other circumstances besides

the speed of the train were favorable.   The question at once sug-
gests itself, who is to be the judge as to whether or not the cir-
cumstances of any particular case are favorable, the court or the
jury.   Manifestly where there is any conflict in the testimony it
must be for the jury to decide.

The law today is not that it is negligence *per se* to enter or leave
a slowly moving train.   Thousands of thoughtful, careful, prudent
and reasonable men step on and off moving cars every day all over
the land and do it with perfect safety.   And where, as in this case,
·there is evidence tending to show that the train had almost stopped,
and the passenger was about to be carried past his destination, tak-
ing into consideration all the other circumstances of the case, it
should be left to the jury to say, whether the circumstances were
favorable and whether the danger was so imminent that an ordina-
rily reasonable and prudent man would not have made the attempt.

MITCHELL, J.   This was an action to recover for personal injuries al-
leged to have been caused by the negligence of defendant's servants
in the management of a train upon which plaintiff was a passenger.

The plaintiff entered the train at White Bear station, for the pur-
pose of going to Lake Shore, a half mile distant, which was merely a
flag or signal station.

The plaintiff's testimony tended to prove that he notified the brake-
man that he desired to get off at Lake Shore station; that the brake-
man gave him to understand that the train would be stopped to let
him off; that, as the train approached the station, it began to slow
up as if for the purpose of stopping; that thereupon plaintiff went
out upon the platform of the car, and stepped down upon the lower
step for the purpose of getting off as soon as the train stopped; that,
while he stood in this position, the train came almost to a standstill,
and then, without stopping, was started ahead again with a violent
jerk, which caused plaintiff to lose his balance, and threw him par-
tially down; that he clung to the railing, with one foot on the step,
but seeing that the train was increasing its speed, and being unable
to regain his footing on the steps, he let go, and dropped himself
upon the ground, and sustained the injuries complained of; that the
point at which he was thrown down by the jerk was about fifty feet
past the depot; that from that point to where he let go was about

one hundred feet; that "after he struck the ground he must have gone a rod or such a matter, over a cattle guard."

On the other hand, the evidence on part of the defendant tended to prove that plaintiff never notified any of the employés on the train that he wanted to get off at Lake Shore station; that none of them knew that he desired to do so; that, upon approaching the station, the engineer, as was the custom, slowed up the speed of the train in order to ascertain if any one desired to get on or off; that, receiving no signal to that effect, he let on steam again, and increased the speed of the train; that plaintiff, after he had passed the depot some considerable distance, and without the knowledge of any of the employés on the train, attempted to jump or alight from the car to the ground when the train was going at the rate of from eight to twelve miles an hour, and in doing so received the injuries complained of. The circumstances tend very strongly to corroborate the contention of the defendant; but of course the question which version of the occurrence was correct was for the jury.

Upon this state of the evidence the court instructed the jury "that, if this accident occurred while plaintiff was in the act of getting off the car while it was in motion, then he cannot recover." It is entirely clear from the record that what the court meant, and what the jury must have understood him as meaning, by "getting off the car," was, not going upon the steps of the platform, but jumping or alighting from the steps to the ground. After a verdict for defendant, the court, on plaintiff's motion, granted a new trial solely upon the ground that this instruction was erroneous; that the question whether alighting from the car while in motion was a negligent act should have been left to the jury.

We are of the opinion that the instruction was, as applied to the facts of this case, correct, and therefore that a new trial should not have been granted. The instruction was only applicable in case the jury found that the plaintiff voluntarily alighted from the moving car, which the jury must be assumed to have found to have been the fact. It is undisputed that the accident occurred about half past two o'clock in the daytime; that plaintiff was in full possession of all his faculties; that he was not invited or instructed by any of the train employés to alight from the moving train; that there was nothing to divert or distract his attention, or to cause him to act under

any sudden impulse, or under apprehension of impending peril; that there was no necessity, or even occasion, for his alighting from the moving car, except to avoid the slight inconvenience of being carried past his destination,—in short, that the act was purely voluntary, and not done under any exceptional or peculiar circumstances.    Furthermore, as plaintiff could have "struck the ground" but once upon leaving or getting öff the car, it necessarily follows that if, instead of being thrown down by the jerk of the train, as he claims, he voluntarily alighted from the car, the place where he thus alighted must have been where he "struck the ground," which, according to his own testimony, was at least one hundred and fifty feet beyond the station, where there was no platform, and where he would have to jump from the car step to the level of the ground.

The great contention of counsel is that, even if plaintiff voluntarily alighted, the court was not justified in holding that this was negligence *per se*, because there was evidence tending to prove that the train was "moving very slow," "coming to a perfect standstill," "almost to a stop."    Whatever the evidence may tend to show as to the previous speed of the train, there is none tending to prove that it was moving at such slow rate of speed when plaintiff reached a point one hundred and fifty feet past the station, where, if at all, he attempted to alight.    On the contrary, the physical fact (admitted by plaintiff himself) that, after he "struck the ground," the momentum which he had acquired from the forward motion of the train carried him "a rod or such a matter," demonstrates that the train must have been moving at a considerable rate of speed.    It seems to us that there is no room for any other conclusion, among men of reasonable intelligence and prudence, than that to attempt to alight from a moving train under such circumstances was negligent almost to the verge of recklessness.

We do not hold that it would be negligence *per se*, under all circumstances, to attempt to alight from, or to get onto, a moving car. There are circumstances under which a person might do so without being chargeable with negligence, or at least where the question would be one for the jury; as, for example, when the person is invited or directed to do so by the employés of the company, or when the act is done under apprehension of impending peril, or where the circumstances are peculiarly favorable, as where the car is barely in

motion, or moving very slowly, opposite a platform, and the person is physically active, and his freedom of motion is unimpeded.

But, except under such or similar exceptional and peculiar circumstances, we think that principle, as well as public policy, requires it to be held that the voluntary act of a person attempting to alight from a moving train should be held negligence *per se,* or at least he should be held to have voluntarily assumed all the risks incident to such an act, and that the railway company should not be held liable for the consequences unless it is guilty of some separate and independent act of negligence (other than merely failing to stop at the station), which proximately caused the injury.

If the particular facts of the cases are carefully considered, it will be found that there was nothing contrary to this view decided in either *Jones* v. *Chicago, M. & St. P. Ry. Co.,* 42 Minn. 183, (43 N. W. 1114,) or *Sahlgaard* v. *St. Paul City Ry. Co.,* 48 Minn. 232, (51 N. W. 111.)

In many cases there will be found the general statement that it is not necessarily negligence *per se* to alight from a moving train; that this is a question for the jury. But such remarks must always be construed with reference to the particular facts of the case under consideration. Both reason and policy require that the rule as to getting on or off moving trains should be much the same as that regarding "looking and listening" at railway crossings, and that the act of commission in the one case, like that of omission in the other, should be deemed negligence unless under peculiar and exceptional circumstances. The duties of carriers and of passengers are reciprocal. If carriers are held to the highest degree of care for the safety of passengers, the latter ought to be held to the exercise of ordinary care to protect themselves.

To borrow the pertinent language of Justice Black in *Railroad Co.* v. *Aspell,* 23 Pa. St. 147: "Locomotives are not the only things that may go off too fast, and railroad accidents are not always produced by the misconduct of agents. A large proportion of them is caused by the recklessness of passengers. This is a great evil which we would wittingly encourage by allowing a premium on it to be extorted from companies."

If a passenger is negligently carried beyond his destination, where he has a right to be let off, he can recover compensation for the con-

sequent inconvenience, expense, and loss of time; but, if he is careless or foolhardy enough to attempt to alight from the moving train, it ought to be understood that, except under exceptional or peculiar circumstances justifying or excusing the act, he does so at his own risk.    There are no such circumstances in this case.

Order reversed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1090.)