JOHN L. FARRELL v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 22, 1907.

Nos. 14,894—(81).

**Carrier and Passengers.**

The duties of carriers and passengers are reciprocal. Carriers are held to the highest degree of care for the safety of passengers. Passengers are held to the exercise of ordinary diligence to protect themselves.

**Arrival at Station—Duty of Passengers.**

Railway companies are required to provide means of access to and egress from their trains and stations which may be used without danger. Passengers who have previously been told that the next stop will be at the station at which they desire to leave the train are ordinarily required, when the train stops, to exercise due diligence in observing the surroundings, in order that they may reasonably determine whether the train has arrived at the place where the company intended them to alight.

**Same—Alighting Passenger.**

If the surroundings and indications of the place at which a passenger under such circumstances does in fact alight are such that they preclude a reasonable belief on his part that he is getting out where the company intended him to leave the train, and such that no ordinarily prudent person, possessing average sense of sight and using it, could suppose that the train had arrived at the place of his intended departure, a passenger who notwithstanding leaves the train at a wrong place, and is hurt in consequence, is prevented by his own negligence from recovering damages.

**Statutory Stop.**

The mere fact that a train is about to stop at a railway junction, in accordance with statute, does not justify him in disregarding the appearance of the actual environment, nor in concluding that the train had arrived at the place named as the next station.

[1] Reported in 111 N. W. 388.

**Contributory Negligence.**

> A passenger on a freight train was told by the conductor that he would have time at the next stop, St. Cloud, to go from the car in which he was riding for his own pleasure to the car carrying his live stock. Subsequently, when the train slackened speed to stop at a junction, across the river from St. Cloud, plaintiff, hearing a whistle, jumped off. The train stopped. While he was getting into his own car a sudden lurch threw him off and hurt him. He relied only on what the conductor told him, and paid absolutely no attention to the surroundings, although he knew he was on a high fill near a cut and on a grade, the buildings at St. Cloud were in plain sight, and the place at which he alighted showed that it was wholly unused for the departure or arrival of passengers. It is *held* (1) that his contributory negligence precluded a recovery of damages; (2) that he was not within the exceptions to the ordinary rule requiring the exercise of diligence on the part of departing passengers to take heed of the physical surroundings in cases which present the alternative of getting off where the train stops or of being carried beyond the passenger's destination, or which involve emergency or peril.

Action in the district court for Mower county to recover $20,000 for personal injuries. The case was tried before Olin B. Lewis, J., presiding in place of Kingsley, J., and a jury, which rendered a verdict in favor of the plaintiff for $3,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and judgment for defendant directed.

Plaintiff and respondent, a passenger on a freight train of defendant and appellant, for his own pleasure was riding in a stock car with his brother-in-law. At a station about twelve miles from the place of accident, at about six o'clock in the morning, he asked the train conductor if he could then go back to the car which carried his own live stock. The conductor replied: "You won't have time here. The next stop will be St. Cloud. If you get right out as soon as the train stops you will have plenty of time, and if you don't it will be your own fault and not ours." The train slackened speed as it approached a railway junction at the easterly end of the bridge over the river opposite St. Cloud. Plaintiff had no personal knowledge of the locality. Hearing the whistle, and supposing that the train had arrived at St. Cloud, he "got out onto the ground and waited for the car to come up." The train afterwards came to a full stop. While climbing into his car

he was thrown off by a sudden jerk of the train, and suffered the damages here sought to be recovered.

While there was controversy as to how dark it was, he testified that he could see that the train was on a high fill near a cut and on a grade with the engine six or seven cars ahead of him; that, although he did not see the bridge, he saw the buildings—which were in fact in St. Cloud—a short distance away. The place bore no indications whatever of ever having been intended to be used, or of having been used, for the arrival or departure of passengers. It differed in no respect from the usual appearance of an ordinary railway crossing. In substantially his own language he relied absolutely upon what the conductor had told him, namely, that the next stop would be St. Cloud. He paid no attention whatever to whether the place at which he got off was St. Cloud or not, and did not look around to see if there were any platforms, station buildings, switches, switch targets, or side tracks, or if he was on a bridge or on the prairie. He got off; did not wait to see whether it was St. Cloud or not. He took his chances that it was. The jury returned a verdict for $3,000. Defendant took this appeal from an order denying its alternative motion.

*M. L. Countryman* and *Geo. H. Reynolds,* for appellant.

*Lovely & Dunn* and *Shepherd & Catherwood,* for respondent.

JAGGARD, J. (after stating the facts as above).

The only assignments of error which we regard as essential to here consider are those addressed to the denial by the trial court of defendant's motion for judgment notwithstanding the verdict, based on the contention that the conceded facts showed plaintiff to have been guilty of contributory negligence as a matter of law.

It is elementary, and in this state well settled, that the duties of carriers and passengers are reciprocal. If carriers are held to the highest degree of care for the safety of passengers, passengers ought to be held to the exercise of ordinary care to protect themselves. Mitchell, J., in Butler v. St. Paul & D. R. Co., 59 Minn. 135, 60 N. W. 1090. More specifically, while railroad companies as a general rule are required to provide means of access to and egress from their trains and stations which can be used without danger, a passenger who leaves a train at a place which is not a regular station is held to the duty of

exercising diligence in observing the surroundings, in order that he may reasonably determine whether the train has arrived at the place where the company intended him to alight. He must take the responsibility of everyday incidents of travel, including the stoppage of cars required by statute at railway junctions, and must govern himself accordingly, even if he has been advised by the conductor that the next stop will be the place at which the passenger expects to leave the train. The mere fact that the train stops at such a junction does not justify him in concluding that it is at the place of his intended departure, nor justify him in disregarding the indications of the actual environment that the train had not arrived at such place. If the surroundings and indications of the place at which a passenger, after such notice by the conductor, does in fact alight, are such that they preclude a reasonable belief on his part that he is getting out where the company intended him to leave the train, and such that no ordinarily prudent person, possessing average sense of sight and using it, could suppose that the train had arrived at that place, a passenger who, notwithstanding, leaves the train at a wrong place, and is hurt in consequence, is prevented by his own contributory negligence from recovering damages.

These propositions are substantially sustained by decisions of other courts. Mitchell v. Chicago, 51 Mich. 236, 16 N. W. 388, 47 Am. 566; Minock v. Detroit, 97 Mich. 425, 56 N. W. 780; Davis v. Lehigh, 64 Hun, 492, 19 N. Y. Supp. 516, 5 Am. Neg. Cas. 529; Smith v. Georgia, 88 Ala. 538, 7 South. 119, 7 L. R. A. 323, 16 Am. St. 63; Richmond v. Smith, 92 Ala. 237, 9 South. 223; East Tennessee v. Holmes, 97 Ala. 332, 336, 12 South. 286. And see Lewis v. London, L. R. 9 Q. B. 66. "Suppose," said Piggott, B., in Bridges v. North London, L. R. 6 Q. B. 377, at page 387, "the name of a landing place be called out on the river steamers as they approach it, no passenger would think of stepping from the vessel without seeing for himself whether he could safely reach the shore; and if its meaning would be so understood there, why is it to have a different meaning applied to it on railways?" In the same case, at page 396, Bramwell, B., said: "Is it pretended that if the train stopped so that a passenger carriage was just where the railway was over an arch, and where there was no

parapet, that the calling out would be an invitation to the passenger to fling himself onto the road or stream below? Surely not." A curiously similar state of facts was considered in Davis v. Lehigh, supra. A train stopped on a bridge at a grade crossing. A passenger, under the impression that his station had been reached, stepped off, fell into the water, and was drowned. It was held that as a matter of law his contributory negligence precluded a recovery of damages by his administratrix. The fact that the conclusion of the judges in Bridges v. North London, L. R. 6 Q. B. 377, was reversed in L. R. 7 H. L. 213, with respect to the propriety of submitting the question of the negligence of the railway company to the jury, deprives the suggestions which we have quoted of none of their cogency with respect to the contributory negligence of the passenger.

No decision of this state determines the immediate question. The facts in Olson v. St. Paul & D. R. Co., 45 Minn. 536, 48 N. W. 445, 22 Am. St. 749, on which the plaintiff relies, are similar to those at bar. There, however, the plaintiff was about to enter a car "with the knowledge and consent of the conductor, who must have known of the situation," and in reliance upon the assurance of the conductor that in so doing plaintiff was "perfectly safe, for the train is not going to stir before the passenger comes up." In the present case no railroad employee knew that the plaintiff had left his brother-in-law's car, or of his subsequent movements. They certainly gave him no specific assurance of safety. Neither Butler v. St. Paul & D. R. Co., 59 Minn. 135, 60 N. W. 1090, nor Jones v. Chicago, M. & St. P. Ry. Co., 42 Minn. 183, 43 N. W. 1114, to which we have been referred, is in point.

The application of these principles to the facts in the instant case permits no doubt that the plaintiff was, as a matter of law, guilty of contributory negligence. He left the train at a place as unused for departure of passengers from either freight or passenger trains as the open prairie, the brush, the timber, or the bridge itself. A most casual vision of his surroundings would have shown him that he had not reached his intended stopping place. His own testimony shows that he saw at a little distance the city at which the conductor told him the train would stop, but that he paid absolutely no attention to the environment, and relied entirely upon the facts that a whistle had

been blown and the speed of the train slackened. It is significant that he left the train before it had stopped. That a train should remain some, if not a long, time after a stop following the call of the next station, has been held to be an essential element of invitation by a carrier to alight. 5 English Ruling Cas. 460; 23 Irish L. T. & Reports, 150. Here, indeed, the conversation by the plaintiff with the conductor was not identical with the formal and conventional announcement by the conductor to the passengers of a coach that the next stop will be a named station, as is usually found in the group of cases commonly referred to as involving an "invitation to alight." It was little more than a friendly colloquy.

There is, moreover, an obvious difference in the significance of the stopping of a passenger and of a freight train. It is reasonable that a passenger should be held to the knowledge that a passenger train makes a through run, stopping at junctions and regular stations, while a freight train makes a broken run, stopping at frequent intervals, and irregularly, at places not stations nor yards, to let passenger trains go by, and generally for convenience of traffic. Per contra, it is undoubtedly true that freight trains often stop in yards and other places at which passengers may properly get off, and at which passenger trains do not stop, and that plaintiff was entitled to act in view of that knowledge. Such places, however, always show, as this place did not, their use for that purpose, if not by a platform or depot, by lights, switches, or evidence on the ground, and in the environment generally, differentiating it from the usual appearance of a mere railway crossing.

Courts have recognized an exception to this rule as to contributory negligence, where a passenger is under reasonable apprehension that, if he does not alight at the place where he is (though an unsafe or an unfit one), he will not have time to alight at all. In such a case he may be justified in taking the risk of alighting as best he can at that place. Webb's Pollock on Torts, 594. The exception, however, applies only to cases presenting the alternative of getting off or being carried beyond the passenger's destination. See Cockburn, C. J., in Rose v. North Eastern, 2 Exch. Div. 248. No such alternative appears in the instant case. Plaintiff was confronted by no analogous emergency. Indeed, while the return to his own car may not have been wholly dis-

connected from his contract of transportation, he had gone to the other car voluntarily, without request from the defendant, for a purpose wholly foreign to it and entirely for his own personal pleasure.

Another exception to the general rule has also been recognized in cases involving other emergencies or peril. In Larson v. Minneapolis & St. L. R. Co., 85 Minn. 387, 88 N. W. 994, the conductor not only called the name of the next station, but opened the coach doors. The car windows were obscured, so that persons unacquainted with the local surroundings could not have learned that fact until outside of the car. Plaintiff, a passenger with her arms filled with packages, attempted to leave the train at a railway junction while it was in motion. She looked down on the platform and its steps to avoid slipping on snow and ice. It was held that she found herself in a position of peril when the train commenced to move, and that it was for the jury to determine whether she was negligent because, when frightened, confused, and dizzy, she may not have acted calmly and discreetly by returning to the car or sitting upon the steps, instead of throwing herself free of the cars when in the act of falling. There was no analogous emergency nor peril in the case at bar.

The conclusion that the plaintiff's conduct, in view of all the considerations referred to, constituted contributory negligence as a matter of law, follows of necessity.

Order reversed, and judgment for defendant directed.