PROVO STY, J.
On Christmas evening, after dark, the plaintiff, a lady of 60, boarded the train of the defendant company at Amite, where she lived, to go to Independence, to visit her sister, who lived there. The distance between Amite and Independence is not shown by the record, but we infer the two places are not far apart, since there is but one station between them — Gullett—and since the conductor testifies that, when the train reached Independence, he had not had time to make his round collecting his fares. Plaintiff took a seat in the rear, or ladies’, coach. The train was composed of five coaches. It stopped at Gullett. As soon as it had resumed its course, the brakeman passed *607 through the coach, announcing that Independence would be the nest stop. On reaching Independence, the engineer slowed down and put on Ms air brakes sooner than he would otherwise have done owing to the presence of a freight train on the side track opposite the station; and, in order to approach the station very slowly and cautiously, he put on his air brakes a second time when within about 150 feet of the regular stopping place at the station. This second putting on the air brakes when a train is moving very slowly has the effect, it seems, of creating the impression that the train has come to a standstill. As soon as the announcement that Independence would he the next stop was made, two gentlemen who were in the same coach with plaintiff rose and walked to the platform, so as to greet in passing any of their friends who might happen to he at the station. One of them testifies that when he reached the platform plaintiff was one step behind him, and that he let her pass; that l>y that time the train had stopped; and that plaintiff went to the west side of the platform, while he went to the east side; that he saw plaintiff go upon the first step of the platform just as the train resumed its motion, and he does not know whether plaintiff thereafter stepped down or fell down. A witness in front of whose store the plaintiff fell, and who was at his store and saw plaintiff fall, says that the train came to a standstill; but that it so remained only a few seconds. Plaintiff herself says that she waited in her seat — as her custom is — until the train had come to a standstill, and until all passengers who might desire to get out had done so, and that she then took upon her arm a basket she had, and went to the platform, and then to the steps, and that, as she was stepping down, with her basket on her arm, the train gave a sudden jerk, whereby she was thrown off. Plaintiff says that she saw no one on the platform; that it was dark outside, and she could not see; that she did not stop to observe whether it was the right place for getting off or not, or to notice whether the conductor or the brakeman was at the steps with his lantern, as is usual, to assist the passengers in getting off; that she could not think; that all she could think of was to try to get off. Plaintiff had not bought a ticket at Amite, although it is a ticket station, and had not paid her fare on the train. She says that the reason of her not taking a ticket was that the train was late, and that she was not certain she would not relinquish the idea of taking it, and that, when it did come, there was no time for taking a ticket; that she did not pay her fare because the conduct- or did not call for it; -that he collected fares from persons across the aisle from her, but passed her by without demanding a fare. The conductor says that he had not yet reached the place where plaintiff was in the collection of his fares, and that plaintiff must have been hastening off the train in order to escape paying her fare; that he knew plaintiff well by sight, and she was particularly strong in trying to evade the payment of her fare; that she would sit next to the window so as to take his attention away from her; and that she had never once presented him a ticket. In that connection it is but jpst to 'plaintiff to say that the same witness referred to above who was on the platform with her says that he too made it a practice not to buy a ticket, but to pay his fare cash. That same witness says that what attracted his attention to plaintiff was that she was getting off at that place, instead of at the regular stop at the depot. The witness in front of whose store plaintiff fell says that the lights from the car window and from his own store and from the hotel and from the adjoining store reached the place where plaintiff fell.
Plaintiff had often traveled on this same train from Amite to Independence. She had *609 done so four or five times that year. She was familiar with the station. She knew that the invariable custom was for the conductor or the brakeman to be at the steps of-the ladies’ coach with his lantern to assist the -passengers in getting out.
Under the foregoing circumstances, we do not think the plaintiff can recover. Waiving the question whether in view of the announcement that the next stop would be Independence there should not have been some warning given to the passengers that this unusual stop, or apparent stop, was not the regular stop, we think plaintiff was under the obligation of being more careful than she was.
“It is elementary that the duties of carriers and passengers are reciprocal. If carriers are held to the highest degree of care for the safety of passengers, passengers ought to be held to the exercise of ordinary care to protect themselves. More specially, while railroad companies as a general rule are required to provide means of access to and egress from their trains and stations, a passenger who leaves a train at a place which is not a regular station is held to the duty of exercising diligence in observing the surroundings, in order that he may reasonably determine whether the train has arrived at a place where the company intended him to alight. He must take the responsibility of everyday incidents of travel, including the stoppage of cars required by statute at railway junctions, and must govern himself accordingly, even if he has been advised by the conductor that the next stop will be the place at which the passengers expect to leave the train. The mere fact that the train stops at such a junction does not justify him in concluding that it is at the place of his intended departure, nor justify him in disregarding the indications of the actual environment that the train had not arrived at such a place. If the surroundings and indications of the place at which a passenger, after such notice by the conductor, does in fact alight, are such that they preclude a reasonable belief on his part that he is getting out where the company intended him to leave the train, and such that no ordinarily prudent person, possessing average sense of sight, and using it, could suppose that the train had arrived at the place, a passenger who notwithstanding leaves the train at a wrong place and is hurt in consequence is prevented by his -own contributory negligence from recovering damages.” 4 Elliott on Railroads (2d Ed.) p. 569, par. 1642, taken from Farrell v. Great Northern R. R. Co., 100 Minn. 361, 111 N. W. 390, 9 L. R. A. (N. S.) 1113, citing Mitchell v. Grand Trunk Railroad Company, 51 Mich. 236, 16 N. W. 388, 47 Am. Rep. 566; Minock v. Detroit & Central R. R. Co., 97 Mich. 425, 56 N. W. 780; Davis v. Lehigh Valley R. R. Co., 64 Hun, 492, 19 N. Y. Supp. 516; Smith v. Georgia Pacific R. R. Co., 88 Ala. 538, 7 South. 119, 7 L. R. A. 323, 16 Am. St. Rep. 63; Richmond & Danville R. R. Co. v. Smith, 92 Ala. 237, 9 South. 223.
Plaintiff was familiar with the locality. The man who was with her on the platform saw at once that the train had not yet reached the regular stopping place; and so would she have done so if she had -but stopped one moment to consider and observe. Instead of this, she rushed blindly ahead incumbered with a basket, and tried to get off unassisted when she could not but have known that the conductor or the -brakeman could not be far away, and would give her assistance if called on. The brakeman as a matter of fact was within arm’s length of her, standing with his lantern on the steps of the next car, ready to step down and assist the passengers as soon as the train would have reached the depot
Judgment set aside, and suit dismissed, with -costs.