*977 Statement of the Case.
MONROE, C. J.
Defendant appeals from a verdict and judgment awarding plaintiff $4,615 (on a claim for $18,115) for personal injuries alleged to have been sustained by reason of a fall, the cause of which, as she asserts, was the negligence of defendant’s employes in starting one of its street cars, from which, as a.passenger, she was in the act of alighting.
This suit was instituted in May, 1915, and followed the discontinuance of a suit for $5,415, upon the same cause of action, which plaintiff had instituted in January, 1915; and defendant filed a plea of estoppel directed at the increase in the demand, which plaintiff explains (in her testimony, though it is not alluded to in her petition) by saying that she found, after instituting the first suit, that her injuries were more serious than she then thought.
From the view that we take of the facts of the case, however, we consider it unnecessary to make further reference to the plea, which seems to have been ignored in the trial court.
Plaintiff, at the time of the accident, is shown to have been about 26 years of age, in good health, and engaged in teaching in one of the Shreveport public schools. She was boarding with Mrs. Grigsby, who resided at No: 740 Hope street in that city, and, on November 6, 1914, she and her hostess paid a visit to the fair which was there being held, and, about 6 o’clock in the evening, in order to return home, boarded one of defendant’s ears, which ran from the fair grounds northward into the city, by way of the right-hand of the two tracks on Texas street, crossing Hope street, en route at a point where that street, coming into Texas street from the westward, is a paved residence street, 38 feet wide, between the curbs, but, coming in from the eastward, is an unpaved alley about 25 feet in width which is said to lead downhill to the railroad yards, the north lines of street and alley being continuous, and the difference in width being taken from the south side of the alley. The two ladies were occupying'the same seat, plaintiff being next to the aisle, and, at the proper time, Mrs. Grigsby, who was the more conveniently located for that office, gave the signal for the car to stop at Hope street. The motorman, at the proper time, made his preparation to stop by cutting off the power and reducing the speed of the car, and the ladies arose from their seats and moved toward the door and out on the rear platform; plaintiff taking the lead, and Mrs. Grigsby following close behind her.
Plaintiff’s version of the accident and of that which succeeded is as follows:
The car was crowded when she entered it, at the fair grounds, but there were few passengers in it when she attempted to alight. She noticed no one save the conductor upon the rear platform when she came out upon it with a view of alighting. “I think,” she says, “it” (the car) “stopped at the near side” (meaning the near, or south, side of Hope street); but whether there, or further along, she testifies that it came to a complete stop, and, just as she was in the act of alighting, “placing her foot on the pavement,” the car being “perfectly still,” it gave a “terrific jolt, or jerk,” which was so severe that she was thrown violently to the ground, and, as it gave the jolt in starting forward, she must have been thrown forward; but “there was a dizziness there,” and the next thing she was able to remember was finding herself in the room at Mrs. Grigsby’s house and realizing that her hand was bleeding and that she was suffering. She further testified that she has done a good deal of traveling in this country and abroad and has had experience in all methods of travel, except aerial navigation.
*979 Mrs. Grigsby testifies that she was right behind plaintiff, and that—
"They” (referring to those who were in charge of the car) “stopped long enough for Miss Boulden to attempt to get off, and, as she attempted to get off, the car started again, and she was in front of me. I was right behind her. I was standing up next to the window. * * * As she stepped off, she caught the rod. Then, of course, she fell; but I didn’t see her when she fell. * • * Q. Why could you not see her when she fell? A. Well, it just threw her. Q. Didn’t you see the whole thing? A. No, sir; I didn’t see her when she fell. * * * Q. You were standing there on the back platform, yourself? A. Yes, sir. Q. She went on ahead of you and stepped down? A. Yes, sir. Q. And the next thing you knew, she had disappeared? A. Yes, sir. Q. And the car .carried you, how far? A. Not very far, the next stop * * * just across the narrow street.”
Mr. C. L. Reed, testifies, at considerable length, that a car in which he was riding stopped twice; once, on the south side of Hope street, because its further progress was blocked by the stopping of a car in front of it, and a second time on the north, or far, side, which was, at that period, the usual and proper place for the letting off or taking on of passengers. He further testifies that, during the second stop, he heard a rumor to the effect that an accident had occurred and a woman had been hurt. “Q. Did you hear what car the lady had fallen from? A. No, sir.” He further says that it was his impression that the rumor related to a lady who had fallen from the ear that he was in. The impression that we get from all the testimony, and which amounts to a conviction, is that the rumor which reached Mr. Reed related to the plaintiff, but that she had fallen from the' car which had preceded that in which Mr. Reed was a passenger and had blocked its progress by stopping, after the accident, with its rear end about 10 feet to the south of the extended north line of the alley (which was also the north line of Hope street, west or proper). Whilst, therefore, Mr. Reed’s testimony shows that the car that he was in stopped twice at the Hope street crossing it contributes nothing to plaintiff’s attempt to show that the car that she was in stopped twice at that crossing.
Will Whitten (or Whitney), a negro, called by plaintiff, testifies that he was in the habit of standing about the southeast corner of Texas street and Hope alley, at which there was a fish house that was patronized by people of his race, and that he saw the accident here in question; that the car from which the lady fell had stopped when she attempted to get off, and that it started with a jerk, “as she went to step off”; that she fell about midway between the lines of the alley, as extended to the railway, and that the car stopped a second time; that, as soon as the lady had fallen, “Frank” (the keeper of the fish house) called him, and told him “not to have anything to do with it,” and that he, at once, went into the fish house and knew nothing more of the affair; that he took particular pains not to see anything after Frank told him to come away. He also testifies that, before the accident and before Frank told Mm to come away, there were a number of colored people standing about where he was standing, but that be was not with any one particularly, and did not know who the others were. Considering his statement that it was his habit, and the habit of other negroes, to stand “around there,” at that hour of the day, it seems to us, improbable, if he was there upon the occasion in question, that he should not have been able to recall the name of any other person who was there, and with whom he might have exchanged comments upon the accident; also, improbable that he should not have been inspired with sufficient interest or curiosity to have Induced him to stay long enough to find out whether the lady was killed, and what became of her remains; but he seemed determined to know nothing except that she was *981 thrown down by the jerk of the car in starting, as she was stepping off, and that the car stopped a second time, after the accident, and he was in error, according to the great preponderance of the evidence upon both, of those points, as also in regard to the place where the accident occurred. Again, “Frank,” called by defendant, testifies that he had seen Whitney’s face, but did not know him by name, and that he had not called him, or any other negro, on the occasion of the accident, or told any one to say nothing about it; and he denied that he had made any statement to the contrary to Mr. Grigsby, who, being called by plaintiff, in rebuttal, testified that he (Frank) had told him (shortly before the trial) that he had told Whitney to shut his mouth and say nothing about it. How, in view of the precautions which are said to have been taken to keep Whitney out of the case, he happened to be summoned as a witness, is not explained; nor is there any light thrown upon the question of the reason why it should have been thought advisable that he should keep to himself such information as he possessed.
Plaintiff’s testimony, to the effect that there were few passengers in the car when she attempted to alight, and that she noticed no one, save the conductor, on the rear platform at that time, stands alone. All the other witnesses who were present and who were interrogated upon the subject testified that the car was crowded, or loaded to its capacity, when plaintiff attempted to alight, and that there were quite a number on the rear platform; in fact, four witnesses besides the conductor, testified that they were on the platform, and the names of two others who were there were mentioned, and it was shown that defendant had endeavored to procure their testimony but had not succeeded. The two witnesses who were in better positions to see the accident, and who observed more closely than the others what happened, were Mr. J. E. Guppies, manager of the “Robson Mercantile Company,” of Robson, La., and Willie James, 13 years old, pupil of the Shreveport Central School, and resident of that city.
Mr. Cupples and a friend, in an automobile, were also returning from the fair grounds, and had been following on the roadway to the right of the railway, the car in which plaintiff was riding, and Mr. Cupples had been, for some little time, watching the car very closely with a view of passing it, which he found somewhat difficult to do by reason of the fact that the travel on the roadway was congested and there were vehicles moving in both directions. He says, in his testimony, that, as the ear approached Hope street, he slowed down his machine to prevent an accident to any passenger who might get off, and that he was not more than 15 or 20 feet behind the car, and saw the lady (plaintiff herein) step off, “kinder backwards,” and that “it threw her full length”; that she got up, herself, and the car then stopped; that he applied his emergency brake, stopped his machine, went to the lady’s assistance, and took her and Mrs. Grigsby home in the machine; 'that, on their way, Mrs. Grigsby asked plaintiff why she got off the car before it stopped, and plaintiff replied that she thought it had stopped; that plaintiff was entirely conscious and rational, and, when they reached the Grigsby house, walked in, with the assistance of Mrs. Grigsby and himself; that he assisted her in removing the glove from one of her hands, the thumb of which was bleeding; and that, after rendering such assistance as he could, he came away. Being asked whether, up to the time that she started to get off, the car had stopped, he answered: “No, sir; it did not stop but once, and that was after she fell.”
Willie James was standing upon the rear platform of the ear, on the side next the step *983 whereby the passengers were getting off, and he would ordinarily step onto the ground in order to get out of their way; and, when plaintiff appeared on the platform, he was preparing (or “fixing,” as he says) to eliminate himself in that way, but, according to his testimony, she went straight ahead and stepped off, before the car stopped, notwithstanding that the conductor said to her, “wait a minute, lady,” a warning which she either did not hear or ignored.
The testimony of the witnesses, named, to the effect that plaintiff was thrown down in an attempt to alight while the car was in motion, is corroborated by that of the conductor, the motorman, and three witnesses who had no connection with defendant, and who were on the platform at the time, as also by that of J. E. Culver, a witness residing in Texas, who was seated inside of the car, upon the fourth seat from the rear, on the right of the aisle.
Mr. Cupples’ testimony, as to the condition of plaintiff’s mind after the accident, is also amply corroborated, and several of the witnesses testify to the warning given by the conductor.
Opinion.
It is not disputed that, at the time of the accident here in question, the rule of the defendant company required its conductors to stop their cars upon the far sides of the cross streets, nor is it disputed that plaintiff was aware that such was the rule, and the custom ; and no reason has been suggested why the conductor of the car upon which she was a passenger should have stopped it on the near side of Hope street. On the other hand, the direct evidence is conclusive to the effect that the car was not stopped there, or stopped at all, for the Hope street crossing, until after the accident, and that plaintiff was thrown down and injured at a point to the southward of the near side of the street, in an attempt to alight from the car before it had stopped, which is determinative of the case. The explanation would seem to be that, knowing that the stop signal had been given and would be obeyed, she allowed her subconscious thought to anticipate the event, and, acting upon the prepossession that the car had stopped, stepped off, without knowing or considering whether it had actually done so or was still in motion.
There is no doubt that she was severely injured, and she is entitled to much sympathy; but the defendant before the court is neither legally nor morally at fault in the matter, and cannot be held liable in damages. McMelon v. R. R. Co., 126 La. 609, 52 South. 783; Morris v. Ill. Cent. R. Co., 127 La. 445, 53 South. 698, 31 L. R. A. (N. S.) 629; Gikson v. Shreveport Traction Co., 142 La. 447, 77 South. 129, L. R. A. 1918B, 1130.
It is therefore ordered that the verdict and judgment appealed from' be annulled, and that there now be judgment for defendant rejecting plaintiff’s demand and dismissing this suit at her cost in both courts.